JONES *v.* HERNANDO BANK.

(Division B. April 12, 1943.)

[13 So. (2d) 31. No. 35324.]

**H. Grady Johnston,** of Hernando, for appellant.

**J. F. Dean,** of Senatobia, for appellant.

476

**Holmes & Bowdre**, of Hernando, for appellee.

Argued orally by **H. Grady Johnston** and **J. F. Dean**, for appellant, and by **F. C. Holmes**, for appellee.

**Alexander, J.,** delivered the opinion of the court.

The Hernando Bank sued Jones for $3,298.11 alleged to be the balance due, with attorneys' fees, upon an original indebtedness of $10,000, bearing eight percent interest. This indebtedness was represented by two notes in the respective amounts of $7,400 and $2,600.

In order to take up these obligations, Jones filed on November 9, 1933, an application with the Federal Land Bank for a loan of $12,500. Subsequently such application was approved for $5,000 with the understanding that the outstanding indebtedness to the Hernando Bank would be scaled down by it to $2,350, such balance to bear six percent interest. Such agreement was executed April 3, 1934, whereupon in October and November, 1934, remittances were made to the Hernando Bank by the Federal Land Bank totaling $5,014.75.

It is contended by Jones that thereupon the total amount owing by him to the Hernando Bank was $2,350. For some unaccountable reason, on November 24, 1934, Jones executed a note to this bank for $2,800 at eight percent interest. This note was renewed from time to time in such amounts as represented intervening credits upon the principal, and at the time of the suit the outstanding renewal note was in the sum of $1,051.10.

Appellant contends that since the proper balance due by him to appellee, pursuant to the agreement with the Federal Land Bank, was $2,350, the taking of a note by appellee for $2,800 represented a usurious overcharge in excess of twenty percent, and that under Code 1930, Section 1946, the entire indebtedness became nonexigible. It is further asserted that the taking of this note was in flagrant disregard of the refinancing agreement and was against public policy and fraudulent. The bank insists that the defense of usury was not properly pleaded since it was sought to be inserted into the bill by oral motion and order. Whether the amendment was properly made (as to which see Code 1930, Section 724), we do not decide for the reason that we have concluded that the transaction is not tainted with usury.

To constitute usury, there must be an intent to commit the act which results in the exaction of a usurious charge. When such act is the result of mistake or misapprehension, this necessary element is lacking. This does not mean that one may be held guiltless merely because he did not deliberately violate the statute or because he was ignorant of or misinterpreted the statute. It is necessary that he purposely do the thing which results in usury. That is to say, a mistake of fact purges the transaction of usury, whereas a mistake as to the legal effect of a purposeful act is a mistake of law and the actor is bound by the result. Smythe v. Allen, 67 Miss. 146, 6 So. 627.

The president of the appellee bank, who signed the agreement with the Federal Land Bank, died about the

time it went into effect. There were other circumstances which the chancellor evidently found explained the failure of the bank to recast the indebtedness of Jones pursuant to the intent of the agreement.

The original notes of $7,400 and $2,600 which constituted Jones' debt to the bank appear not to have been surrendered to him, but were retained as evidences of his continuing obligation. Nor was there a new note executed for the agreed principal balance of $2,350. Instead, the present officials of the bank seek to explain the taking of a new note for $2,800 by saying that the proposed agreement did not contemplate a forgiveness of interest accruing during the pendency of the negotiations with the Federal Land Bank. This interest computed by them at $414.75 was deducted from the Land Bank's remittance of $5,014.75, and the remainder, $4,600 was credited on the $7,400 note, leaving a balance of $2,800, for which the new note was taken. The bank was at least consistent in its error as to the import of the refinancing agreement for it thereafter brought suit upon the original note of $2,600. This suit was dismissed because of the terms of the agreement. Furthermore, the interest rate was not reduced to six percent as the agreement required.

There is no need to speculate as to the effect of such an ignoring of the agreement. Whether censurable as a defiant disregard of its terms or a mere misapprehension of its application is not the question before us. Nor need we arbitrarily designate the omission as usury merely as a means by which the bank may be punished for alleged bad faith. It is sufficient that the chancellor found that usury in fact did not exist and that his decree is consistent with Jones' theory and contention that his corrected balance due in November 1934 was $2,350.

The special master made two computations. The first used the $2,800 note as a basis, against which successive payments and renewals were taken into account. This resulted in a finding that there was a balance due of

$2,040.99. The second proceeded upon the assumption that the true balance at the time the agreement became effective was $2,350, pursuant to which assumption there was a balance due of $1,917.47.

Under the former theory, it became necessary to take into account certain reductions in the face of two renewal notes in the respective amounts of $500 and $710, required by the State Banking Department. Whether such amounts were written off merely to conform to the examiner's unwillingness to accept them as solvent credits at face value in the bank's statements, or whether they thereby became credits upon the balance owed by Jones, we need not decide. We have reached the conclusion that the second theory, which was adopted by the master and the chancellor and which was the theory contended for by Jones, is the correct one. We find that by taking $2,350 as the true balance and crediting subsequent payments by Jones first to interest due with balance to principal (as required by Code 1930, Section 1950), a balance larger than either of the amounts found by the master results.

There being no cross-appeal by the bank attacking the lesser figure, we find there is no error prejudicial to the bank, and the decree of the chancellor, which includes also interest and fees of the master and the attorneys, is affirmed.

Affirmed.