ROBERTSON, Presiding Justice,
for the Court:
United Companies Mortgage & Investment of Southwest Mississippi, Inc., and C. Wayne Dowdy, Trustee, appeal from a decree of the Chancery Court of Amite County ordering that all interest and finance charges due from Homer E. Lester and wife, Norma Lester, under the terms of an installment promissory note and deed of trust executed by them on July 26,1978, be forfeited because inadvertently United had charged an annual percentage rate of 18.05% when the maximum annual percentage rate should have been 17.66%.
Appellants assign as error that:
*1351 1. The trial court erred in finding for the appellees, ordering that all interest and finance charges due the appellant be forfeited, after a finding, determination and adjudication by the court that the overcharge of interest was the result of a bona fide error, made in good faith.
On July 26, 1978, Homer Lester and his wife executed an installment promissory note in favor of appellant in the amount of $32,052.72, to be paid back over a period of seven years in monthly installments of $381.58, beginning September 1, 1978. The principal was $18,068.50, and the interest was $13,984.22. A deed of trust was executed to secure the payment of this note. The annual percentage rate (APR) of 18.05% was stated on the face of the note and disclosure statement.
Because of sickness, the Lesters became delinquent in their payments. The Lesters went to see John Graves, the manager of United, to see about refinancing the loan. Graves advised the Lesters that United would not be able to refinance the loan, but, thinking that the APR of 18.05% seemed a little high, he again ran the loan through the computer and discovered that he, Graves, had charged the Lesters too much interest. Graves was manager of United’s McComb office from February, 1976, until May, 1979, when he left United to go to work for Money Mart Mortgages, a competitor.
At the trial, Graves testified that he told the Lesters about his error in figuring the interest and finance charges in June or July, 1979, when they visited him at his new place of work. The Lesters employed an attorney, John Gordon Roach, Jr., to look into the matter, and he called D. C. Greer, the new manager of United’s McComb office, and he agreed to check on it.
On August 10,1979, Greer wrote the Les-ters:
Dear Mr. & Mrs. Lester,
As a result of a periodic review of your account, we have discovered certain errors in your disclosure statement.
A corrected copy of the disclosure statement is enclosed, and your account has been credited $394.80. Your new balance is $28,223.70 and the principal payments are as follows:
1 X $376.02
74 X $376.32
The corrected copy of the disclosure statement showed an annual percentage rate of 17.66%. The monthly payments were reduced from $381.58 per month to $376.32 per month.
The Lesters again becoming delinquent in their monthly payments, on September 25, 1979, C. Wayne Dowdy, United’s attorney, wrote the Lesters advising how much it would take to reinstate the loan and avoid foreclosure. The Lesters paid nothing and the loan was not reinstated. Foreclosure proceedings were begun. The Lesters, on October 24, 1979, filed their bill of complaint against United and Dowdy, Trustee, praying that the foreclosure sale be enjoined, and that the promissory note, the deed of trust and any and all other security instruments be canceled and declared void and of no effect because the annual percentage rate of 18.05% constituted a usurious rate of return. In their bill of complaint, the Lesters said, among other things:
“(10) Complainants would show unto the Court that they wish to avail themselves of Section 75-67-119 of the Mississippi Code of 1972, as amended, which states in part:
‘If any charges in excess of those expressly permitted by this article are charged, contracted for or received, except as the result of an accidental or bonafide error, the contract of loan shall be void and the licensee shall have no right to collect or receive any principal, interest, or other charges whatsoever, ...”
(Emphasis added).
The bill of complaint also contained a prayer for general relief.
After a full trial in which the former manager of United’s McComb office, John Graves, testified for the Lesters, the chan *1352 cellor rendered his opinion, wherein he found, among other things:
“[I]n my opinion it is equally clear that the error made was an actual accidental and bonafide error. Now Mr. Graves was a witness for the Complainants. He was Complainants’ witness and he said it. Testimony is undisputed that he made a mistake. He was guilty of the error. He made the error because he didn’t correctly use his machine. He didn’t wait the four or five minutes needed it would take the machine to correctly compute the rate. He attempted to use the computer by some other means and that he and he alone made the error.
“As I review the record, it is absolutely uncontradicted that the error was an accidental error and that there was no question of intent to commit an error or defraud Mr. and Mrs. Lester whatsoever.” (Emphasis added).
The court ended its opinion with this language:
“So, I’m of the opinion that the evidence shows that this was an accidental and bona-fide error and that therefore, the Complainants have failed in their proof and that accordingly this Complaint should be dismissed at Complainants’ cost.” (Emphasis added).
On January 25, 1980, the Lesters filed a motion for a rehearing and/or a new trial. In their motion, the Lesters said:
“As brought to the Court’s attention during the trial of the above entitled action reference was made to Section 75-17-1 of the Mississippi Code of 1972, as amended, which, in part, provides in sub-paragraph nine of the said Section:
‘... If a greater finance charge than that authorized by this Section or by other applicable laws shall be stipulated or received in any case, all interest and finance charge shall be forfeited and may be recovered back, whether the contract be executed or executory
As per the findings of this court announced the Court affirmatively found that a greater interest rate than that allowed by law was charged.”
The court heard argument on the motion for rehearing, took the matter under advisement, and on February 25, 1980, rendered this opinion:
“Well, Gentlemen, of course you are presenting argument that was not presented at the conclusion of the case when we tried it in Liberty.
“It is just a simple issue of whether or not the defendant had to have a specific intent to defraud or whether .they are charged with what they did whether the intent to defraud was there or not. It appears to me the cases are conflicting on this. I am going to give the borrower the benefit of the doubt. If the mistake was made — I am going to give them the benefit of the doubt. I am holding that all interest and carrying charges be forfeited by the lender.”
The formula, for figuring interest and finance charges which together make up the annual percentage rate, is extremely complicated. Under this formula there is a graduated annual percentage rate. On the first $600 of unpaid balance, the rate is 36% per annum. The rate for that portion of the unpaid balance between $600 and $1800 is 33% per annum; the rate for the unpaid balance in excess of $1800 but not greater than $4500 is 24% per annum; and the rate for all in excess of $4500 is 12% per annum. MCA 75-17-1, as amended by 1974 General Laws, Ch. 564, Sec. 1(7). Although a skilled computer operator, former manager John Graves inadvertently made a mistake in figuring the annual percentage rate of return.
This short provision is buried in the middle of long and complicated section 75-17-1(9):
“If a greater finance charge than that authorized by this section or by other applicable laws shall be stipulated for or received in any case, all interest and finance charge shall be forfeited, and may be recovered back, whether the contract be executed or executory.”
This section must be harmonized with Mississippi Code Annotated section 75-67-119 (1972):
*1353 “If any charges in excess of those expressly permitted by this article are charged, contracted for or received, except as the result of an accidental or bona fide error, the contract of loan shall be void and the licensee shall have no right to collect or receive any principal, interest, or charges whatsoever; ...” (Emphasis added).
In Jones v. Hernando Bank, 194 Miss. 474, 13 So.2d 31 (1943), this Court stated:
“To constitute usury, there must be an intent to commit the act which results in the exaction of a usurious charge. When such act is the result of mistake or misapprehension, this necessary element is lacking. This does not mean that one may be held guiltless merely because he did not deliberately violate the statute or because he was ignorant of or misinterpreted the statute. It is necessary that he purposely do the thing which results in usury. That is to say, a mistake of fact purges the transaction of usury, whereas a mistake as to the legal effect of a purposeful act is a mistake of law and the actor is bound by the result. Smythe v. Allen, 67 Miss. 146, 6 So. 627.”
194 Miss. at 478, 13 So.2d at 32 (Emphasis added).
In view of the fact that the chancellor found “that the error made was an actual accidental and bonafide error” and that Section 75-67-119 exempts such an error from causing a forfeiture, we are of the opinion that the court erred in ordering that all interest and finance charges be forfeited and in providing that all the Les-ters owed was the principal, and that over the remainder of the 7-year term of the mortgage the Lesters would only pay back the principal.
The decree of the lower court is, therefore, reversed and judgment is rendered here for the appellants, dismissing the bill of complaint of the appellees.
REVERSED AND RENDERED.
PATTERSON, C. J., SMITH, P. J., and SUGG, WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.