589 So.2d 660 (1991)
William F. WATKINS
v.
MISSISSIPPI BAR.
MISSISSIPPI BAR
v.
William F. WATKINS.
Nos. 90-BA-444, 91-BA-740.
Supreme Court of Mississippi
November 6, 1991.
*661 Andrew J. Kilpatrick, Jr., Reynolds & Kilpatrick, Jackson, for appellant.
Charles J. Mikhail, Jackson, for appellee and petitioner.
No response filed for respondent.
EN BANC.
McRAE, Justice, for the Court:
This opinion reflects the consolidation of two actions. The first ("Watkins I") is an appeal by Mississippi attorney William F. Watkins ("Watkins") from a judgment of the complaint tribunal publicly reprimanding him, suspending him from the practice of law for thirty days, and directing him to repay a debt. The second ("Watkins II") involves a complaint by the Mississippi Bar ("the Bar") which seeks to have Watkins disbarred from the practice of law pursuant to Rule 6 of the Mississippi Rules of Discipline.
We reverse the judgment of the complaint tribunal in Watkins I but grant the Bar's request in Watkins II for an Order of Disbarment. Since the disbarment effectively moots the suspension issue raised in the Watkins I appeal, we shall first address matter of Watkins II.

I.

DISBARMENT (WATKINS II)
The Bar's "Formal Complaint for Disbarment" arises out of Watkins' guilty plea and subsequent sentencing in U.S. District Court on multiple felony counts of financial institution fraud and false statements to influence actions of a federally insured financial institution. Watkins pleaded guilty to three counts of a six-count indictment in the U.S. District Court for the Eastern District of Louisiana. The June 5, 1991, "Judgment and Probation/Commitment *662 Order" from the district court indicates that Watkins pleaded guilty to the offenses proscribed in 18 U.S.C. §§ 2, 1014 and 1344 and secured dismissal of the other three counts of the six-count indictment. The Order also imposes concurrent sentences of five years' probation for each count and requires Watkins to pay a fine of $5,000, to make restitution to Southeast National Bank of Hammond, Louisiana, in the sum of $27,174.54, to make restitution to Pelican Homestead Bank of Metarie, Louisiana, in the sum of $107,335.00, and to pay a special assessment in the amount of $150.00. The sentence further requires Watkins to perform 300 hours of community service, to obtain approval from the probation officer before incurring new or additional credit, to provide a financial statement twice a year to the probation officer along with any financial information requested, and to report to the probation officer any transactions that involve the sale or resale of personal, family, or business properties.
Miss. Rules of Discipline, Rule 6(a) provides:
Whenever any attorney subject to the disciplinary jurisdiction of the Court shall be convicted in any court of any state or in any federal court, or enter a plea of guilty ... therein, of any felony (other than manslaughter) ... a certified copy of the judgment of conviction shall be presented to the Court of Complaint Counsel and shall be conclusive evidence thereof. The Court shall then forthwith strike the name of the attorney and order his immediate suspension from the practice of law.
Rules 6.1  6.2 further provide:
A Formal Complaint, with a certified copy of the criminal judgment or conviction attached, and a motion for indefinite suspension pending appeals shall be filed with the Court, upon which the attorney shall be automatically suspended subject to the right of such attorney to move for reconsideration upon a showing that the judgment or conviction has been reversed or a new trial is granted... . Upon a showing that the time for all appeals has expired, or that all appeals have been concluded without reversal, the attorney shall be automatically disbarred.
All elements of the above-quoted rules are satisfied (including the attachment to the Bar's complaint of a certified copy of the criminal judgment). Since Watkins pleaded guilty to the crimes out of which the Bar's complaint arises and consented to the Judgment and Commitment,[1] no appeal will be forthcoming. Further, Watkins has responded neither to the complaint nor to this Court's customary order to show cause. Automatic disbarment is thus appropriate under Rule 6.2 of the Mississippi Rules of Discipline. See Mississippi State Bar v. Nichols, 562 So.2d 1285, 1288 (Miss. 1990) (guilty plea to felony offense, inter alia, warranted disbarment).

II.

SUSPENSION, REPRIMAND, AND RESTITUTION (WATKINS I)

A. Facts and Procedural History

In January, 1987, Watkins attempted to obtain a $32,000 loan from Claude Mullins, a long-time friend and business associate. Watkins needed the money to redeem 1,237 shares of First Southwest Corporation stock that he had pledged as collateral to Trustmark National Bank of McComb in order to deliver these same shares to a Jackson banker by 5:00 p.m. on January 29. Mr. Mullins could not loan Watkins the money. Watkins then asked Mrs. Carolyn Mullins, Claude's wife, for the loan, assuring her that he would repay the $32,000 in one week out of proceeds from other business ventures and loans and also pay her a $4,000 premium for the use of the money for the week. Mrs. Mullins agreed to loan the $32,000 to Watkins and made out a check payable to Claude Mullins, who in turn negotiated the check and gave Watkins a cashier's check for $32,000. In exchange for the loan, Watkins gave Mrs. *663 Mullins a promissory note dated January 29, 1987, obligating himself to pay her $36,000 on February 6, 1987. He also gave her a letter dated January 19, 1987, acknowledging the debt and assuring her that he had instructed his wife that should he die before repaying the loan and premium that she was to pay back Mrs. Mullins out of his life insurance proceeds.
Watkins used the money to redeem the shares, but he did not repay Mrs. Mullins in one week as he promised and failed to honor Mrs. Mullins' repeated requests for repayment. Watkins filed for reorganization under Chapter 11 of the Bankruptcy Reform Act in September, 1987. He listed Mrs. Mullins as an unsecured creditor.
On June 10, 1988, sixteen months after she was promised repayment, Mrs. Mullins filed a complaint against Watkins with the Mississippi State Bar.
On April 25, 1989, the Bar filed a formal complaint against Watkins. The Bar alleged that Watkins, in entering into a usurious contract with Mrs. Mullins, had violated DR1-102(A)(4) of the Code of Professional Responsibility and Miss. Code Ann. § 73-3-35 (1972). DR1-102(A)(4) provides that a lawyer shall not "[e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Miss. Code Ann. § 73-3-35 (1972), includes the Attorney's Promise to demean himself with "good fidelity" to court and client and, inter alia, to abstain from falsehood.
On May 19, 1989, Watkins answered the Bar's complaint. He admitted agreeing to pay Mrs. Mullins a $4,000 premium for the use of $32,000 for a week and that he had given her a letter assuring her that his wife, should he die before he repaid the loan and premium, would pay her out of his insurance proceeds. He insisted, however, that, in doing so, he was not dishonest, did not commit fraud, was not deceitful, and did not engage in a misrepresentation. Watkins also claimed that Claude Mullins was fully aware of his financial condition since Mullins and he were often partners in business ventures. Watkins raised five affirmative defenses. He asserted:
1. that the formal complaint failed to state a cause of action;
2 .that the usury laws were not applicable where a borrower offers to pay additional money in return for a loan and that he never intended to raise usury as a defense to repayment of the loan;
3. that no attorney-client relationship existed between Mrs. Mullins and him;
4. that his listing of Mrs. Mullins as a creditor was pursuant to and in compliance with the Bankruptcy Reform Act; and
5. that Mrs. Mullins filed a complaint with the Bar for the sole purpose of harassing him and attempting to get him to pay back the loan.
As to the last defense, Watkins claimed Mrs. Mullins' complaint to the Bar was a "malicious prosecution and abuse of process" which entitled him to "maintain a civil action against Mullins to recover all damages, cost and expenses" incurred by him in defending the complaint. Watkins, and thereafter the Bar, moved for summary judgment.
On November 22, 1989, the Complaint Tribunal filed an opinion denying Watkins' motion for summary judgment and granting the Bar summary judgment on its counter motion. A 2-1 majority found that "Mr. Watkins' conduct is in violation of DR1-102(A) [Rule 8.4(c) of the Rules of Professional Conduct] ... [and that] Mr. Watkins has demonstrated unprofessional and unethical conduct, conduct which constitutes legal grounds for the imposition of discipline." Presiding Judge Larry Roberts filed a dissenting opinion favoring the granting of Watkins' motion for summary judgment.
On January 30, 1990, the Tribunal entered judgment in accordance with the majority opinion and ordered that Watkins be issued a public reprimand and suspended from the practice of law for 30 days. The Tribunal also ordered Watkins to either make restitution to Mrs. Mullins within 30 days of the entry of final judgment or reaffirm the $32,000 indebtedness in the *664 form of a note payable on demand with interest from the date of the advancement by Mrs. Mullins at the prime rate plus 1% and deliver the note to Mullins within 30 days of the entry of final judgment.
Watkins has appealed.

B. Law

In considering this appeal, this Court proceeds de novo. Mississippi State Bar v. Nichols, 562 So.2d 1285, 1287 (Miss. 1990). The Court may in its discretion give deference to the findings of the Complaint Tribunal, Mississippi State Bar v. Odom, 566 So.2d 712, 714 (Miss. 1990), but it can affirm the Complaint Tribunal's grant of summary judgment only if it finds that the evidence, viewed in the light most favorable to the non-moving party, presents no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc., 519 So.2d 413 (Miss. 1988); Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983).
In the case sub judice, the Bar asserts four primary grounds for complaint: (1) that Watkins entered an illegal, usurious contract, thus evidencing his unfitness to practice law; (2) that Watkins practiced deceit by entering into a contract to repay money on terms he knew or should have known were unenforceable; (3) that Watkins practiced deceit by telling Carolyn Mullins that he had instructed his wife to repay the subject loan out of insurance proceeds should he die before repayment when such a commitment would not be binding upon the wife; and (4) that Watkins' actions violated the Attorney's Oath found in Miss. Code Ann. § 73-3-35.

1. Did Watkins Evidence Unfitness to Practice Law by Entering into a Usurious Contract?

It should first be noted that the record reflects no attorney-client relationship between Watkins and Carolyn Mullins. Since the conduct in question arose outside Watkins' professional capacity, discipline should be imposed only if the alleged "misconduct is of a serious nature, and tends to show him to be an unfit person to be an attorney." Rhodes v. Rhodes, 420 So.2d 759, 761 (Miss. 1982). The Bar contends that Watkins engaged in such conduct by promising to repay the loan to Carolyn Mullins at a usurious rate of interest.
The Bar relies upon the language of Miss. Code Ann. § 75-17-1 (Supp. 1988) which speaks of interest rate limits in terms of what a "borrower or debtor may contract for and agree to pay." The Bar reasons thusly: Section 75-17-1 allows a borrower to agree to pay interest up to a certain percentage rate; as a corollary, therefore, a borrower may not agree to pay interest above the statutory ceiling; therefore, a borrower who agrees to pay interest above the statutory ceiling violates § 75-17-1.
The Bar's interpretation of the statute has a certain logical appeal. By placing the onus on the borrower, however, it ignores the central purpose of usury law: protecting borrowers from overreaching creditors. See Consumers Credit Corporation of Mississippi v. Stanford, 194 So.2d 868, 871 (Miss. 1968) (usury statutes reflect effort to prevent "certain class of moneylenders" from exacting exorbitant and oppressive interest rates); Early v. Williams, 239 Miss. 320, 123 So.2d 446 (1960) (purpose of usury law is to hold moneylenders accountable for improvident contracts). According to 45 Am.Jur.2d Interest and Usury § 8 (1969):
In construing a statute relating to interest or usury, the court ... should discover the legislative intent, and if such intent is determined, it controls general statements in the act... . The object of usury legislation being to protect borrowers from the outrageous demands often made and required by lenders, that view of the law should be adopted which will accomplish this purpose.
The phrasing of § 75-17-1 is concededly ambiguous and facially amenable to the construction placed upon it by the Bar. But such a construction cannot be reconciled with the usury law's fundamental aim of providing a shield for vulnerable or imprudent debtors. The responsibility for complying with the usury law falls upon *665 the lender, not the borrower. It is the creditor, not the debtor, who commits an illegal act upon entering a usurious contract. This view is supported by the rule that the commission of usury requires an intent "to commit the act which results in the exaction of a usurious charge." Cortner v. Bennett, 230 Miss. 369, 376, 92 So.2d 559 (1957) (emphasis added); see also Jones v. Hernando Bank, 194 Miss. 474, 13 So.2d 31, 32 (1943) ("To constitute usury, there must be an intent to commit the act which results in the exaction of a usurious charge"). To "exact" means to "press for" or "demand." Webster's New Collegiate Dictionary 397 (5th ed. 1977). Obviously, only the lender can possess the intent to "exact." It is clear, therefore, that the liability for usury violations falls upon the lender and not the borrower.
Accordingly, Watkins did not break the law when he agreed to repay Carolyn Mullins at a rate of interest exceeding that allowed by § 75-17-1. Whether or not Watkins qualifies as a vulnerable or improvident debtor is irrelevant. What is relevant is that Carolyn Mullins, as a lender, is not within the category of persons that the usury law is designed to protect. Watkins's promise to repay his debt to Carolyn Mullins at a usurious rate therefore offends neither the letter nor the spirit of § 75-17-1. Since the alleged illegality of Watkins' action in entering the subject contract underlies the Bar's claim that Watkins is unfit to practice law, the Bar's claim in this regard must fail as a matter of law.

2. Whether Watkins Practiced Deceit by Entering an Unenforceable Contract?

The Complaint Tribunal found that Watkins practiced deceit upon Carolyn Mullins and thus violated Miss.R.Professional Conduct, Rule 8.4(c) by entering a loan contract with her in "which he could, if he chose, claim usury as an affirmative defense against repayment." (emphasis added). Unquestionably, it would have been unethical and unprofessional for Watkins to trick Mrs. Mullins into lending him money at an exorbitant rate of interest so that he could avoid repayment by asserting usury. But the fact is, there is no evidence whatsoever that Watkins agreed to usurious terms as a means for ultimately avoiding his contract. To this day, Watkins has never asserted usury as a defense against his debt to Carolyn Mullins. That a lawyer might do something unethical "if he chose" is not grounds for discipline. As the appellant aptly points out in his brief:
In essence the majority [of the Complaint Tribunal] .. . would have this Court find that the fact that a possibility of misconduct was present is sufficient to impose discipline. The ramafications [sic] of such a finding are incredible in the area of attorney discipline. In short, an attorney can be disciplined for depositing money into his trust account because an attorney could embezzle those funds "if he chose." There must be something more to an attorney disciplinary matter than the possibility of misconduct.
In the total absence of non-speculative evidence, the Bar's claim that Watkins' agreement to pay usurious interest violated Rule 8.4(c) cannot stand.

3. Whether Watkins Practiced Fraud and Deceit by Indicating that He Had Instructed His Wife to Repay the Debt out of Life Insurance Proceeds Should He Die Before Repayment?

Regarding this issue, the Complaint Tribunal found:
[T]he letter to Mrs. Mullins, assuring her that he had instructed his wife to repay the loan out of life insurance proceeds should he die before repayment in full, when he knew or should have known that such was not binding on his wife, a letter which was probably issued as an inducement to her to make the loan, constitutes conduct involving elements of fraud and deceit.
There is no indication in the record, nor does the Bar allege, that Watkins lied concerning what he told his wife. Instead, the Bar asserts that Watkins' fraud inheres in his having implicitly represented to Carolyn Mullins that his instructions concerning insurance proceeds would be legally binding upon his wife. We find no evidence indicating that Watkins implied such. The *666 record's only reference to the matter appears in the January 19 letter which states in pertinent part:
This [letter] will also evidence the fact that I have this day instructed my wife to pay you the sum of $36,000.00 out of life insurance benefits if in fact I die betweeen [sic] now and the date of payment in full. (emphasis added)
For A to tell B that he has instructed C to do X simply does not, without more, imply that C is bound to do X.
The Bar has not established its claim that the subject letter evidences fraudulent and deceitful conduct by Watkins.

4. Whether Watkins Violated the § 73-3-35 Attorney's Oath?

Section § 73-3-35 of the Mississippi Code sets out in relevant part the following oath for attorneys:
I will demean myself, as an attorney and counselor of this court, according to the best of my learning and ability, and with all good fidelity as well to the court as to the client; that I will use not falsehood nor delay any person's cause for lucre or malice, and that I will support the constitution of the State of Mississippi.
Judge Roberts' dissent succinctly disposes of this issue:
Suffice it to say, that I see no evidence on the summary judgment motions and no reasonable inferences can be drawn from the evidence on the summary judgment motions that Respondent Watkins ... failed to demean himself with all good fidelity to the Court (what Court?), to the client (what client?), used falsehood (what falsehood?), nor delayed any person's cause (what delay?), nor failed to support the state constitution.
The Tribunal should have granted Watkins' motion for summary judgment.

CONCLUSION
In Watkins I, appellant/respondent Watkins is entitled to summary judgment on both the Rule 8.4 and the § 73-3-35 claims. Accordingly, the public reprimand and restitution/reaffirmation requirement imposed by the Complaint Tribunal must be reversed. Watkins' disbarment in Watkins II, renders the thirty-day suspension moot. In Watkins II, respondent's multiple felony convictions require immediate and automatic disbarment from the practice of law. This opinion constitutes the court's mandate and disbarment order and is effective November 6, 1991, notwithstanding the filing of a petition for rehearing, if any is filed within fourteen (14) days of this order.
AS TO: 90-BA-444: PUBLIC REPRIMAND OF APPELLANT/RESPONDENT REVERSED.
AS TO: 91-BA-740: APPELLANT/RESPONDENT DISBARRED FROM THE PRACTICE OF LAW.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and ROBERTSON, PITTMAN and BANKS, JJ., concur in No. 90-BA-444.
HAWKINS, P.J., and PRATHER and SULLIVAN, JJ., dissent in No. 90-BA-444.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur in No. 91-BA-740.
HAWKINS, Presiding Justice, Dissenting as to Watkins I:
Watkins I chronologically precedes Watkins II. Watkins II is before us on a June 5, 1991, judgment of the U.S. District Court for Eastern Louisiana convicting Watkins of felonies.
Watkins I concerns activities of Watkins in 1987, and I would affirm the judgment of the complaint tribunal suspending Watkins from the practice of law for thirty days and publicly reprimanding him.
While Watkins II far overshadows Watkins I in egregious misconduct, I cannot overlook the failure of the majority to see anything inappropriate in Watkins' conduct in 1987.
The majority has stated the facts essentially correctly. On January 29, 1987, Watkins borrowed $32,000 from his friend's wife, executing a promissory note to repay her in a week. In September, 1987, he filed for bankruptcy listing $199,305.33 in unsecured *667 debts, among which was Mrs. Carolyn Mullins. The list is attached as an appendix.
This matter came before a panel of this Court on appeal May 5, 1991.

LAW
Watkins' defense at the hearing and on appeal is that he has done nothing wrong. The transaction was outside any attorney-client relationship, and it was incumbent upon the State Bar to show by clear and convincing evidence that he was guilty of misconduct evincing want of personal honesty and integrity which renders him unworthy of public confidence. Brumfield v. Mississippi State Bar Ass'n, 497 So.2d 800 (Miss. 1986); An Attorney v. Mississippi State Bar, 478 So.2d 289 (Miss. 1985). He contends that he had no intent to commit usury, and that his action did not constitute usury. Consumers Credit Corp. of Mississippi v. Stanford, 194 So.2d 868 (Miss. 1967); Cortner v. Bennett, 230 Miss. 369, 92 So.2d 559 (1957); Hardin v. Grenada Bank, 182 Miss. 689, 180 So. 805 (1938).
I agree with the majority that the obvious primary purpose of our statute on usury is to protect borrowers. The majority misses the point, however, in seeing nothing amiss in a lawyer borrower, who undoubtedly knows the law on usury, entering into a contract in which he is the beneficiary knowing full well that when it comes time for him to pay it is unenforceable. The majority agrees with Watkins, "I did nothing wrong. I was the borrower." The majority misses the subtleties of Watkins' wrongdoing.
Furthermore, the wording of the statute, if we are to follow plain language, applies to both the borrower and the lender.
Miss. Code Ann. § 75-17-1 (Supp. 1988) in pertinent part states:
(1) The legal rate of interest on all notes, accounts and contracts shall be eight percent (8%) per annum, calculated according to the actuarial method, but contracts may be made, in writing, for payment of a finance charge as otherwise provided by this section or as otherwise authorized by law.
(2) Any borrower or debtor may contract for and agree to pay a finance charge for any loan or other extension of credit made directly or indirectly to a borrower or debtor which will result in a yield not to exceed the greater of ten percent (10%) per annum or five percent (5%) per annum above the discount rate, excluding any surcharge thereon, on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where the lender is located, each calculated according to the actuarial method. The rate of finance charge authorized under this section (2) shall be known as the "contract rate."
.....
(5) Notwithstanding the foregoing and any other provision of law to the contrary, any borrower or debtor may contract for and agree to pay and any lender or extender of credit may contract for and receive any finance charge agreed to in writing by the parties, notwithstanding that such charge is in excess of that otherwise allowed on any contract, credit sale, obligation or other extension of credit, regardless of the security taken or the purpose of the extension of credit, under which the principal balance to be repaid shall originally exceed:
(a) One Hundred Twenty-five Thousand Dollars ($125,000.00) from July 1, 1986 through June 30, 1987;
(b) Seventy-five Thousand Dollars ($75,000.00) from July 1, 1987 through June 30, 1988;
(c) Twenty-five Thousand Dollars (25,000.00) from and after July 1, 1988; ...
From this statute it is clear that Watkins' obligation was usurious.
Watkins argues that the usury laws did not apply to his dealings with Mrs. Mullins because it was an arm's length transaction. This statute applies to all loan transactions, not just those in which the poor and unlearned are involved. Section § 75-17-1 prohibits both the borrower and debtor from "contract[ing] for and agree[ing] to pay" an interest rate above that prescribed by statute. The law does not "tolerate any *668 devices to defeat its provisions when the consummation of usury is really intended." Hardin v. Grenada Bank, 182 Miss. at 708, 180 So. at 809 (1938). The loan in the present case did not fit any exception in § 75-17-1(5). Watkins entered into an illegal and usurious contract.
Watkins' argument that he is not in violation of the usury laws because he did not have the intent to commit an act which results in the exaction of interest is also without merit. In Jones v. Hernando Bank, 194 Miss. 474, 478, 13 So.2d 31, 32 (1943), this Court said:
To constitute usury, there must be an intent to commit the act which results in the exaction of a usurious charge. When such act is the result of mistake or misapprehension, this necessary element is lacking. This does not mean that one may be held guiltless merely because he did not deliberately violate the statute. It is necessary that he purposefully do the thing which results in usury. That is to say, a mistake of fact purges the transaction of usury, whereas a mistake as to the legal effect of a purposeful act is a mistake of law and the actor is bound by the result.
See also, Jefferson Standard Life Insurance Co., 173 Miss. 854, 859, 163 So. 506, 507 (1935).
In Kennedy v. Porter, 176 Miss. 742, 748, 170 So. 286, 287 (1936), this Court held: "[a] contract for usurious interest is a corrupt contract, and is violative of the public policy of this state. The courts, in order to ascertain whether the contract is usurious, will look through the form to the substance; the real facts will control."
Moreover, in measuring Watkins' acts with standards of professional conduct, neither the tribunal nor this Court is confined to the naked fact that Watkins executed a promissory note carrying with it an exorbitantly usurious rate of interest. The tribunal did not so confine itself, nor in reviewing this case de novo should we. Mississippi State Bar v. Nichols, 562 So.2d 1285 (Miss. 1990); Goeldner v. Mississippi State Bar Ass'n, 525 So.2d 403 (Miss. 1988); Foote v. Mississippi State Bar Ass'n, 517 So.2d 561 (Miss. 1987); Vining v. Mississippi State Bar Ass'n, 508 So.2d 1047 (Miss. 1987).
Watkins, an attorney, entered into a loan transaction with a lay person which he as an attorney either knew or certainly should have known was wildly usurious. When he borrowed the money, he must have known that in the absence of some fortuitous circumstance over which he had no control, he would be unable to repay it. There is nothing in the record showing how Watkins himself expected to earn $32,000 in a week, or any source from which he expected to receive such sum.
Here was an attorney desperate for money, and who did not care who got hurt, so long as it was not himself. Although he fervently assured repayment in a week, he had to know that in all likelihood neither this nor anything like this would come to pass. If he expressed any uncertainty whatever to Mrs. Mullins as to his ability to repay in a week, it is not in this record.
Moreover, he did not repay the $32,000 in a week, he did not repay $4,000, he did not repay a nickel of it, then or ever.
Instead, he made additional promises, and other reassurances to his creditor until the last shred of credence was stripped from them, and then went for protection to the United States bankruptcy office.
Moreover, Watkins did this to a friend. He was not attempting to render Mrs. Mullins a favor in borrowing the money from her. He would have cheerfully made the bargain he made with any lender. He was trying to help himself, just himself, in a desperate financial crunch.
He did not alert Mrs. Mullins in any way that he might not be able to repay her. He assured her that he would repay her in a week. From what source did he expect to get the money to repay her? Did he tell her? Did he make any effort to explain that he might possibly be unable to repay it? If he did, it is not in this record. He assured her fervently that she would be repaid, plus a $4,000 interest charge, in just one week's time.
*669 He did not repay. The only thing Mrs. Mullins still has is his word that he will repay it. What is that worth? And as the tribunal perspicaciously noted, Watkins dealt Mrs. Mullins a hand in which he knew he was retaining the trump card.
Add to this that even now it has not occurred to Watkins that there could possibly be anything unethical in what he has done. There is not a scintilla of contrition in his pleadings, his affidavit, or his brief on appeal. His answer accused Mrs. Mullins of "malicious prosecution," and threatened her with a lawsuit for even filing a complaint against him. Brumfield, 497 So.2d at 808.
It takes but a modest knowledge of human affairs, a rudimentary grasp of human character, to glean from this record that Mrs. Mullins  purely and simply  was "had." We are not required, nor should we be inclined to draw Watkins a plainer picture of why his conduct was wrong. Lawyers simply do not treat their friends the way Watkins treated Mrs. Mullins, at least if they expect to continue practicing law.
Nor is it any defense to Watkins that some attribute of Shylock may have been in the character of the creditor. He knew the only way he could get the loan was to agree to this exorbitant payment. He cheerfully agreed to it knowing he could get out of paying it, and he did not pay it, or any of it.
The complaint tribunal perceived a serious character flaw in Watkins when it suspended him from law practice for 30 days and ordered a public reprimand. Clearly the tribunal was correct in its analysis.
Except for the fortuitous circumstance that Watkins was caught and convicted in far more serious transgressions, he would still be practicing law, per the grace of the majority, and the public totally unaware that he posed a threat to society.
The only body on this earth with the final authority to decide whether an attorney should be disciplined in the practice of law is this Court. It is saddening that this Court finds itself unable to agree on whether Watkins' conduct was wrongful. It is also saddening that this is not the first time this Court finds itself tarrying to determine whether a lawyer has done anything wrong only to learn he has committed more transgressions while we debated. The public is entitled to a prompt resolution of these matters.
When I entered law school in 1941, there were approximately 35 law graduates each year for a state population of 2,200,000.[1] Today, with an increase of only 400,000 in our state population, the University of Mississippi School of Law has an annual graduating class of approximately 150, and the Mississippi College School of Law graduates approximately 100 annually. This state is being flooded with lawyers, and there is nothing to indicate the enrollment in these schools of law will significantly decrease.
This proliferation of lawyers has markedly increased the fierce competition between lawyers. This Court must become more vigilant, more protective of the public, not less, not the same as we have been. Otherwise the practice of law as a profession will soon be over.
PRATHER and SULLIVAN, JJ., join this opinion.

APPENDIX A

 LIST OF CREDITORS WITH UNSECURED CLAIMS
 Justice Oil Company
 P.O. Drawer N
 Jena, LA 71342 ..................................... $66,962.05
 Carolyn Mullins
 415 Schilling Drive
 Magnolia, MS 39652 ................................. 36,000.00

*670
 Sybil Jo Bailey
 P.O. Box 3435
 Morgan City, LA XXXXX-XXXX ......................... 24,000.00
 Jack Hare
 # 3 Andromeda Drive
 Milton, FL 32750 ................................... 24,000.00
 Monitor Petroleum
 280 Madison Avenue
 Suite 1105
 New York, NY 10016 ................................. 14,062.50
 Trustmark National Bank
 P.O. Box 647
 McComb, MS 39648 ................................... 12,060.24
 Reed and Gaddis Construction
 P.O. Box 167
 Foxworth, MS 39483 ................................. 7,781.73
 L.H. Clark
 P.O. Box 507
 McComb, MS 39648 ................................... 7,438.81
 Marshall Production Company
 P.O. Box 186
 Milton, FL 32572 ................................... 7,000.00

NOTES
[1] The United States District Court's Amended Judgment and Commitment (attached to Complaint) states that Watkins "consents to the Judgment and Commitment entered herein."
[1] And, I can assure those too young to know that there was no shortage of lawyers in 1941.