620 So.2d 1213 (1993)
The MISSISSIPPI BAR,
v.
James H. MATHIS.
No. 90-BA-1109.
Supreme Court of Mississippi.
June 24, 1993.
*1214 Charles J. Mikhail, Michael B. Martz, Jackson, for appellant.
James H. Mathis, Corinth, for appellee.
En Banc.
DAN M. LEE, Presiding Justice, for the Court:

ON PETITION FOR REHEARING
On petition for rehearing, the original opinions are withdrawn and these opinions are substituted therefor, increasing the suspension from 180 days to one (1) year.

STATEMENT OF THE CASE
The Mississippi State Bar (the Bar) charged James Mathis with violating various provisions of the Code of Professional Responsibility, the Rules of Professional Conduct, and the statutory oath of attorneys. Mathis answered, admitting the material factual allegations but denying any ethical violations. The Bar moved for summary judgment, which was granted by the Tribunal.
The Tribunal found Mathis guilty of violating DR 7-102(A)(3) and (5), Rule 3.3(a)(1) and (4), and the statutory oath of attorneys. A public reprimand was imposed, although one member of the Tribunal dissented because he believed the punishment was not sufficiently severe. From this judgment of the Tribunal, the Bar appeals and requests review of the following issues:
1. Did James H. Mathis violate the following provisions of the Code of Professional Responsibility (for conduct prior to July 1, 1987) and the Rules of Professional Conduct (for conduct after July 1, 1987), respectively, and the statutory oath of attorneys:
A. DR 1-102(A)(1), (4), (5), and (6), which prohibit a lawyer from violating a disciplinary rule, engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, conduct prejudicial to the administration of justice or conduct that adversely reflects on his fitness to practice law?
B. DR 7-102(A)(3) and (5), which prohibit a lawyer from concealing or knowingly failing to disclose that which he is required by law to reveal or knowingly making a false statement of law or fact?
C. Rule 3.3(a), which prohibits a lawyer from making a false statement of material fact or law to a tribunal, failing to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client, or offering evidence that the lawyer knows to be false?
D. Rule 8.4(a), (c), and (d), which prohibit a lawyer from violating a rule of Professional Conduct, engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, or engaging in conduct that is prejudicial to the administration of justice? And

E. Section 73-3-35 of the Mississippi Code of 1972, which requires a lawyer to demean himself with all good fidelity *1215 to the Court as to the client, to use no falsehood nor delay any person's cause, and to support the Constitution of the State of Mississippi?

2. Did the Complaint Tribunal impose upon Mathis the appropriate discipline, under the facts and circumstances of this case, when it imposed a public reprimand?
Mathis filed a cross-appeal which was dismissed by this Court on the basis of the Bar's motion to dismiss for failure to pay costs and expenses.
The Bar subsequently filed a motion to cite respondent with contempt for failure to pay costs and expenses, which was passed for consideration with review on the merits.

MOTION TO CITE RESPONDENT WITH CONTEMPT FOR FAILURE TO PAY COSTS AND EXPENSES

The judgment of the Complaint Tribunal assessed costs and expenses against Mathis, in addition to imposing a public reprimand. The Bar filed its motion for costs and expenses, to which Mathis filed no response or objection. The Tribunal thereafter entered an order awarding costs and expenses, ordering Mathis to pay the Bar the sum of $499.95 by October 30, 1990.
On October 19, 1990, the Bar filed its notice of appeal of the Tribunal's judgment. Mathis then filed a motion to stay proceeding to enforce judgment, including the payment of expenses assessed, which was denied by this Court on November 28, 1990. On October 31, Mathis filed his notice of cross-appeal. The Bar responded with a motion to dismiss Mathis' cross-appeal for his failure to pay costs and expenses. This motion was granted on February 20, 1991, by this Court, assessing all costs of the cross-appeal against Mathis.
The Bar now asks that Mathis be held in contempt for failure to pay the costs and expenses assessed and ordered by the Complaint Tribunal. Mathis contends that the Bar seeks to have this Court enforce the same judgment of the Tribunal which they are appealing; that the Rules of Discipline for the Mississippi Bar do not provide for enforcement of payment of costs and expenses by contempt; and that costs and expenses should be enforceable as in any other judgment, i.e., upon conclusion of this appeal.
The Rules of Discipline provide for taking an appeal as follows:
Any notice of appeal shall be filed and served on all opposing counsel within thirty (30) days of the date on which the Tribunal's judgment was filed with the Clerk of the Court and by paying within that time, all sums assessed as costs and expenses. Failure to give notice within that time or failure to pay the costs and expenses assessed, or failure to pay any costs due the Clerk of Court, shall be grounds for dismissal, notice and payment within the time provided being jurisdictional for any appeal. Otherwise, appeals shall be taken as in other civil cases.
Rules of Discipline, 9.2 (1992). These Rules further state:
No private reprimand shall issue within thirty (30) days provided for taking an appeal or until the Court has disposed of any appeal. Judgment of public reprimand, suspension or disbarment shall, immediately become a matter of public record, but an appeal duly perfected, as provided above shall operate as supersedeas except for making public the imposition of such public discipline... .
Rules of Discipline, 9.3 (1992). Rule 27 provides:
(a) A Tribunal or the Court may assess costs incurred in the investigation, prosecution and defense of any disciplinary matter as justice may require.
(b) An attorney exonerated of the charges may recover from the Bar any sums actually paid to the Bar and costs paid to the Clerk of the Court or for service of process in this State.
Rules of Discipline, 27(a) and (b) (1992).
Although somewhat troubling, the language of the Rules shows that filing an appeal does not act as supersedeas for payment of costs and expenses. However, careful consideration of these rules leads *1216 the Court to the conclusion that dismissal is the only consequence contemplated for failure to pay costs and expenses. Mathis has already been punished as provided in Rule 9.2 with the dismissal of his cross-appeal. Therefore, the motion to cite for contempt is denied.

STATEMENT OF THE FACTS
As Mathis admitted virtually all of the factual allegations of the formal complaint, this statement of facts is taken primarily from the formal complaint and answer filed in this case.
On the evening of May 24, 1985, J.R. Laughlin died of a gunshot wound to the head while in the master bedroom of his home in Corinth. His wife, Becky Laughlin, was the only one with him at the time of the shooting but denied seeing the shooting or knowing how it happened. Upon hearing the gunshot, Becky Laughlin called her son, J.R. Laughlin, Jr., who came to the house and immediately called his son's lifelong friend, Mathis, to come to the house. Shortly thereafter, officials from the Corinth Police Department and the Alcorn County Sheriff's Department, as well as Dr. Tom McLees, a local pathologist, George Coleman, Jr., Alcorn County Coroner, and others, proceeded to the Laughlins' home. An inquest was held and the Coroner's report concluded the death was "accidental," even though some jurors later said they never ruled the death accidental, only that Laughlin died as a result of a gunshot wound to the head. An autopsy was not performed before Laughlin was buried.
Amidst accusations of a less-than-thorough investigation of the case, Danny Lowrey, Alcorn County Attorney, interviewed various people and on June 6, 1985 (two weeks after the shooting), asked Dr. Thomas Bennett, the then Medical Examiner for the State of Mississippi, to assist in the investigation.
Shortly after Laughlin's death, Becky Laughlin filed claims with various insurance companies to collect accidental death benefits. Some of the insurance companies paid her claims promptly; others (with an aggregate amount of approximately $250,000.00) did not.
In November, 1985, the Honorable Edward Moss of Oxford, Mississippi, who then represented some of the non-paying insurance companies, learned of Lowrey's request for assistance from Dr. Bennett and that Dr. Bennett was contemplating having Laughlin's body exhumed for an autopsy. He asked Dr. Bennett to provide him with the results of his investigation and autopsy for his clients' use in evaluating Becky Laughlin's claims. The remaining defendants soon followed suit and made the same request of Dr. Bennett.
In January, 1986, Mathis filed suits against the defendants on behalf of Becky Laughlin for nonpayment of her claims and for bad faith. After persistent efforts by the defendants to procure the services of Dr. Bennett in their defense of the lawsuits, Dr. Bennett obtained a permit from the Mississippi State Board of Health in April of 1986 for exhumation and autopsy. Dr. Bennett, however, decided to obtain a court order granting him permission to have the body exhumed and to perform an autopsy. In September of 1986, Dr. Bennett petitioned the Circuit Court of Alcorn County for an order authorizing disinterment of the body of Laughlin on the grounds he was investigating a homicide. Judge Thomas J. Gardner, III, denied the petition and ruled that he would only entertain such a petition by the District or County Attorney and gave Mathis time to propound discovery to Dr. Bennett to determine the need for an autopsy. Judge Gardner also ruled that the results of the prospective autopsy would not be admissible in any civil proceedings.
The defendant insurance companies, being of the opinion that inadmissible autopsy results would be of no use to them in Becky Laughlin's civil cases, filed in federal court in November, 1986, a motion to have Laughlin's body produced for an autopsy pursuant to discovery rules 34 and 35 of the Federal Rules of Civil Procedure. Mathis, attorney for Mrs. Laughlin, vigorously resisted the motion by arguing, inter alia, that Becky Laughlin did not own or *1217 possess the corpse and "could not produce the body from the ground even if she were disposed to do so," and that the State of Mississippi "is the only entity with any authority with reference to the disposition of bodies once they are interred"; that the proposed exhumation was not seasonable or reasonable; that "[i]t is not the plaintiff [Becky Laughlin] who stands in the way of an exhumation, it is the clear public policy of Mississippi which forbids it"; and that "an autopsy, even if performed, would reveal nothing which could form the basis for an expert opinion on the manner and means of death." Mathis and Becky Laughlin's son had already covertly (in June of 1986) had an autopsy performed by the Shelby County, Tennessee Medical Examiner, Dr. Jerry Francisco.
Interrogatories were propounded by the insurance companies asking for the identity of each person retained in anticipation of litigation or in preparation for trial but who was not expected to be called as a witness upon the trial of this matter and other persons with knowledge, whether personal or otherwise, of the matters and facts relating to the complaint. Mathis responded that he had not retained anyone in anticipation of litigation or in preparation for trial, although he had discussed the case with numerous experts, and no other persons with knowledge of the matters and facts relating to the complaint could be identified. These responses were made after the June, 1986 autopsy.
Other interrogatories asked for: information relating to any tests, inspections or measurements made or taken with respect to the scene or any object involved in the incident, to which Mathis responded that none had been performed (in his answer to the Bar's complaint, Mathis admitted tests were performed but claimed they were privileged work product and not discoverable); names of persons having knowledge of any fact or matter relevant or material to this action, to which Mathis responded with a list of names which did not include the Medical Examiner who performed the autopsy; and persons with first-hand knowledge of the facts and circumstances of the death prior to and after the incident, in response to which Mathis failed to list Dr. Francisco. These responses, too, were made after the June, 1986 autopsy.
Becky Laughlin stated in her deposition, in the presence of Mathis, that she opposed an autopsy because she couldn't bear to have her husband's body torn apart. At the time this deposition was taken, Mathis knew that an autopsy had already been performed, but Becky Laughlin had not been so informed. In Mathis' 1986 memorandum in opposition to Defendants' motion for extension of discovery deadline, he said "[n]o autopsy has been performed, and the State Medical Examiner has no intention of petitioning the court for an Order permitting exhumation for autopsy." Mathis claims this referred only to an autopsy by the Mississippi Medical Examiner and the defendants erroneously reached the wrong conclusion that he referred to any other autopsy.
An interrogatory propounded by one of the defendants, served after the June, 1986 autopsy, asked for an explanation as to why the defendants' reason for determining the death was not accidental is not legitimate or arguable, to which Mathis responded by saying that the defendants were trying to deny the claim based upon an awaited autopsy, which had not taken place to date. Again, Mathis claims that he referred only to an autopsy performed by the Mississippi Medical Examiner.
After a hearing before U.S. Magistrate Jerry A. Davis, the court ruled on February 20, 1987, that an autopsy would answer factual questions about the cause and manner of death of Laughlin, and that exhumation and autopsy could reasonably lead to the discovery of admissible evidence, and thus aid in the disposition of the litigation.
On February 27, 1987, one week after Judge Davis' ruling, Mathis advised the Court by letter that an autopsy had already been performed on Laughlin's body in June, 1986, by Dr. Jerry Francisco, Medical Examiner for Shelby County, Tennessee; that the autopsy was "destructive testing" and little remained of the body for exhumation; *1218 that he would be happy to furnish the defendants with copies of Dr. Francisco's report if they would bear a portion of the costs; and that the results of the autopsy confirmed the physical evidence established by the testimony of the witnesses.
After receiving Mathis' February 27, 1987 letter, Judge Davis issued an order on March 2, 1987, finding that Mathis violated his duty as an officer of the court by not fully advising the defendants and the court of all relevant facts, including the existence of an autopsy report; giving Mathis ten days to show cause why he should not be sanctioned and held in contempt of court; and ordering him to furnish copies of the autopsy report to the defendants at no cost.
Mathis responded to the court's March 2, 1987 order to show cause by essentially attacking the conduct of defendants and their relationship with Dr. Bennett and justifying the June 1986 autopsy as the only method by which he could have preserved the evidence before Dr. Bennett had Laughlin's body exhumed, adulterated, and before he gave an unbridled interpretation to his autopsy results.
After considering the order to show cause and responses thereto, Judge Davis issued an order awarding defendants their fees and expenses incurred in prosecuting the motion to produce and in addressing Mathis' response to the order to show cause. Mathis filed no appeal of the order nor any objections to the defendants' certificates of the amounts of their fees and expenses. Mathis appealed the order to Judge Davidson, who ruled that the appeal was untimely according to F.R.C.P. 72(a) and that Mathis' contentions that he made no misrepresentations of fact and that the autopsy and its results were covered by the work product privilege were without merit. Judge Davidson affirmed Judge Davis' finding that Mathis had violated Rules 11 and 26(g) by giving false discovery responses and 28 U.S.C. Section 1927 by conduct which led to unreasonable multiplication of proceedings. Mathis and his client were ordered to pay the defendants the sum of $40,969.85 in sanctions.
The Committee on Professional Responsibility for the Bar assessed costs and expenses incurred in the investigation which preceded the filing of the formal complaint to be $60.85.
When the motion for summary judgment on the Bar's formal complaint was heard before the complaint tribunal, Mathis argued that Dr. Francisco was employed for a separate legal proceeding, that being the possible criminal indictment of Becky Laughlin. As Dr. Francisco was not employed to provide any information relating to the civil suits, Mathis did not believe he was required to provide in discovery any information relating to his employment of Dr. Francisco. He went on to say that he believed the autopsy to be work product and a privileged communication which he was not allowed to reveal. Mathis admitted, upon questioning by the Tribunal, that the body was the only evidence in either civil or criminal proceedings. Mathis said he had concealed the autopsy from the court because he thought he had to conceal it. He also said the defendants already had evidence establishing everything that was learned in the autopsy.
The Bar countered by arguing that work product privilege or attorney-client privilege must be asserted affirmatively, rather than allowing an attorney to determine that a privilege applies and withhold information in discovery. The Bar also asserted that autopsy results or the fact that an autopsy was performed are not work product.

STATEMENT OF THE LAW

Standard of Review
"The Supreme Court of Mississippi (the Court) has exclusive and inherent jurisdiction of matters pertaining to attorney discipline, reinstatement, and appointment of receivers for suspended and disbarred attorneys... ." Rule 1 of the Rules of Discipline for the Mississippi State Bar *1219 (1984). On appeal, this Court "shall review the entire record and the findings and conclusions of the Tribunal, and shall render such orders as the Court may find appropriate." Foote v. Mississippi State Bar Association, 517 So.2d 561, 564 (Miss. 1987) (quoting Rule 9.4 of the Rules of Discipline for the Mississippi State Bar (1984)). When reviewing disciplinary matters this Court reviews the evidence de novo and no substantial evidence or manifest error rule shields the Tribunal from scrutiny. Watkins v. Mississippi Bar, 589 So.2d 660, 664 (Miss. 1991); Foote, 517 So.2d at 564, citing Hoffman v. Mississippi State Bar Association, 508 So.2d 1120, 1124 (Miss. 1987); Vining v. Mississippi State Bar Association, 508 So.2d 1047, 1049 (Miss. 1987); Mississippi State Board of Psychological Examiners v. Hosford, 508 So.2d 1049, 1054 n. 4 (Miss. 1987). However, this Court is not prohibited from giving deference to the findings of the Tribunal. Mississippi State Bar v. Odom, 566 So.2d 712, 714 (Miss. 1990).
While the review of evidence is de novo, deference is given to the Tribunal's findings due to its exclusive opportunity to observe the demeanor and attitude of the witnesses, including the attorney, which is vital in weighing the evidence. Broome v. Mississippi Bar, 603 So.2d 349, 353 (Miss. 1992); Mississippi State Bar v. Strickland, 492 So.2d 567 (Miss. 1986). However, the Tribunal's grant of summary judgment may be affirmed only if this Court finds that the evidence, viewed in the light most favorable to the non-moving party, presents no genuine issue of material fact. Watkins, 589 So.2d at 664.
Punishment for any violation of the Rules of Discipline is considered and imposed on a case-by-case basis and is not governed by a set standard. Bd. of Psychological Examiners, 508 So.2d at 1049; A Mississippi Attorney v. Mississippi State Bar, 453 So.2d 1023 (Miss. 1984). This Court "will not hesitate to impose substantial sanctions upon an attorney for any act which evinces want of personal honesty and integrity or renders such attorney unworthy of public confidence." Foote, 517 So.2d at 564; Brumfield v. Mississippi State Bar Association, 497 So.2d 800, 808 (Miss. 1986).

1. Did James H. Mathis violate the following provisions of the Code of Professional Responsibility (for conduct prior to July 1, 1987) and the Rules of Professional Conduct (for conduct after July 1, 1987), respectively, and the statutory oath of attorneys:

A. DR 1-102(A)(1), (4), (5), and (6), which prohibit a lawyer from violating a disciplinary rule, engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, conduct prejudicial to the administration of justice or conduct that adversely reflects on his fitness to practice law?

D. Rule 8.4(a), (c), and (d), which prohibit a lawyer from violating a rule of Professional Conduct, engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, or engaging in conduct that is prejudicial to the administration of justice?

The conduct of Mathis which is at issue can be summed up simply: he failed to disclose the autopsy of June 1986, which was performed on the body of J.R. Laughlin by Dr. Jerry Francisco, to the court and opposing counsel in the civil action for bad faith denial of insurance coverage pending in the U.S. District Court for the Northern District of Mississippi and created, in pleadings and discovery responses, the impression that no autopsy had been performed. The Bar alleged that this conduct effected violations of DR 1-102(A)(1), (4), (5), (6), and Rule 8.4(a), (c), and (d).
The Code of Professional Responsibility was applicable in Mississippi until July 1, 1987, at which time this state adopted the Rules of Professional Conduct. Mathis' conduct which gave rise to the original complaint occurred prior to our adoption of *1220 the Rules. Apparently out of caution, the Bar alleged violation of both Disciplinary Rules from the Code and their substantially identical counterparts in the Rules. For purposes of this opinion, the corresponding provisions of the Code and the Rules will be combined for discussion.
DR 1-102(A)(1) provided that a lawyer shall not violate a disciplinary rule, as does Rule 8.4(a). DR 1-102(A)(4) provided that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation, as does Rule 8.4(c). DR 1-102(A)(5) mandated that a lawyer not engage in conduct that is prejudicial to the administration of justice, as does Rule 8.4(d). DR 1-102(A)(6) prohibits a lawyer from engaging in any other conduct that adversely reflects on his fitness to practice law.
Mathis' conduct clearly violated all of the above-cited provisions of the former Code of Professional Responsibility and the current Rules of Professional Conduct. Mathis' knowing misrepresentations to the court and opposing counsel that no autopsy had been performed on Laughlin's body violated DR 1-102(A)(4) and Rule 8.4(c). Mathis admitted that Laughlin's body was the only evidence in either the civil cases pending or a potential criminal case, yet he failed to disclose both the fact that an autopsy had been performed and the results of the autopsy. This conduct was prejudicial to the administration of justice, in violation of DR 1-102(A)(5) and Rule 8.4(d). Mathis' deliberate misrepresentations and admitted concealment of the autopsy reflect adversely upon his fitness to practice law, contrary to DR 1-102(A)(6). His violation of these provisions in turn worked a violation of DR 1-102(A)(1). Although the Tribunal did not address whether any of these provisions were violated by Mathis, this de novo review allows this Court to make such a determination. The conduct was intentional and knowing, as Mathis admitted, and the violations are clear. This Court finds that Mathis violated the above mentioned portions of the Code and the Rules.

B. DR 7-102(A)(3) and (5), which prohibit a lawyer from concealing or knowingly failing to disclose that which he is required by law to reveal or knowingly making a false statement of law or fact?

C. Rule 3.3(a), which prohibits a lawyer from making a false statement of material fact or law to a tribunal, failing to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client, or offering evidence that the lawyer knows to be false?

Again, the disciplinary rules which Mathis is alleged to have violated were subsumed by the Rules in July, 1987, so a discussion of these provisions is combined.
DR 7-102(A)(3) prohibited a lawyer, in his representation of a client, from concealing or knowingly failing to disclose that which he is required by law to reveal. "Rule 3.3(a)(2) is implicit in DR 7-102(A)(3)... ." Rules of Professional Conduct 3.3, Comment. DR 7-102(A)(5) provided that a lawyer, in his representation of a client, shall not knowingly make a false statement of law or fact, as does Rule 3.3(a)(1).
The Comments to these Rules are illuminating.
[A]n assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it be true on the basis of a reasonably diligent inquiry. There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation. The obligation ... not to counsel a client to commit or assist the client in committing a fraud applies in litigation.
* * * * * *
Except in the defense of criminal accused, the rule generally recognized is that, if necessary to rectify the situation, an advocate must disclose the existence of the client's deception to the court or to *1221 the other party... . [T]he alternative is that the lawyer cooperate in deceiving the court, thereby subverting the truth-finding process which the adversary system is designed to implement... . Furthermore, unless it is clearly understood that the lawyer will act upon the duty to disclose the existence of false evidence, the client can simply reject the lawyer's advice to reveal the false evidence and insist that the lawyer keep silent. Thus the client could in effect coerce the lawyer into being a party to fraud on the court.
Rules of Professional Conduct, 3.3, Comment.
Although responsibility for knowledge of matters included in pleadings and other documents prepared for litigation is usually upon the client, in this instance Mathis had personal knowledge of the autopsy and his client did not. Still, in the face of such knowledge, Mathis boldly asserted that no autopsy had been performed and that none should be performed. Surely this failure to disclose is the equivalent of an affirmative misrepresentation. Mathis assisted his client, Becky Laughlin, in committing a fraud upon the court. Although Mrs. Laughlin was not aware of the deception, Mathis was. Mathis subverted the truth-finding process which our adversary system is designed to implement. Rather than his client coercing him into being a party to fraud on the court, Mathis coerced his client.
In his brief, Mathis stated he believed his retention of Dr. Francisco was in connection with another case (the anticipated criminal action against Mrs. Laughlin), and therefore he could not reveal information relating to the autopsy in discovery proceedings for the civil case. Mathis's purported motive was to protect Mrs. Laughlin from an anticipated specious homicide charge.
Mathis concealed and knowingly failed to disclose the fact that an autopsy had been performed, the results of that autopsy, that he had employed Dr. Francisco, and that Dr. Francisco had discoverable knowledge regarding the death of Laughlin. Although Mathis argued that he was not required to disclose any of this information because of attorney-client privilege and because the autopsy was his work product, these arguments are without merit. Even if such privileges were believed applicable by Mathis, it was not for him to determine that the privilege applied. The proper procedure would have been for him to object to the interrogatories and deposition questions and affirmatively assert the privilege, leaving the matter to be decided by the court. Instead, Mathis blatantly lied, repeatedly, and reported that no autopsy had been performed.
The violations of DR 7-102(A)(3) and Rule 3.3(a)(2) are apparent. This same conduct effected a violation of DR 7-102(A)(5) and Rule 3.3(a)(1) in that Mathis repeatedly made false statements of fact to both the court and opposing counsel, and he did so knowingly.
The Tribunal found Mathis violated DR 7-102(A)(3) and (5) and Rule 3.3(a)(1). Additionally, the Tribunal found a violation of Rule 3.3(a)(4). Giving deference to the Tribunal's findings, as this Court may do, examination of the record in this case warrants a finding that Mathis' conduct violated DR 7-102(A)(3) and (5) and Rule 3.3(a).

E. Section 73-3-35 of the Mississippi Code of 1972, which requires a lawyer to demean himself with all good fidelity to the Court as to the client, to use no falsehood nor delay any person's cause, and to support the Constitution of the State of Mississippi?

Mississippi Code Section 73-3-35 (Supp. 1992), gives the lawyers' oath which must be taken by a lawyer in each court where he intends to practice. The oath reads as follows:
I do solemnly swear (or affirm) that I will demean myself, as an attorney and counselor of this court, according to the best of my learning and ability, and with all good fidelity as well to the court as to the client; that I will use no falsehood nor delay any person's cause for lucre or malice, and that I will support the Constitution *1222 of the State of Mississippi so long as I continue a citizen thereof. So help me God.
Miss. Code Ann. § 73-3-35 (Supp. 1992).
In light of the violations of the previously mentioned disciplinary rules and Rules of Professional Conduct, and giving deference to the Tribunal's finding that this statute was violated, it is easy to conclude that Mathis did indeed violate the attorneys' oath. The misrepresentations and falsehoods repeatedly and knowingly asserted by Mathis and his admitted concealment of evidence on one hand, and "good fidelity" to the court on the other, are mutually exclusive.

2. Did the Complaint Tribunal impose upon Mathis the appropriate discipline, under the facts and circumstances of this case, when it imposed a public reprimand?

Regarding the purposes of punishment for ethical violations, this Court has said:
First, there is the obvious intent to punish the wrongdoer to the degree that the sanction is appropriate for the offense. Secondly, many theories on the role of sanctions recognize their utility as a deterrence to further violations both on the part of the immediate offender and the general community. Finally, sanctions have a definite role in reinforcing the confidence of the general public in the ability of society to govern itself. This third role is particularly important in regard to Bar disciplinary proceedings because our profession assumes the responsibility of governing its members. Therefore, public confidence and faith in the integrity of the entire Bar is dependent upon our willingness to impose appropriate sanctions on our members who have violated the Code of Professional Responsibility.
Pitts v. Mississippi State Bar Association, 462 So.2d 340, 343 (Miss. 1985). When determining sanctions for misconduct this Court considers the following: (1) the nature of the misconduct; (2) the need to deter similar misconduct; (3) preservation of the dignity and reputation of the profession; (4) protection of the public; and (5) sanctions imposed in similar cases. Steighner v. Mississippi State Bar, 548 So.2d 1294 (Miss. 1989); Broome v. Mississippi Bar, 603 So.2d at 353.
The nature of Mathis' misconduct was deceit. The need to deter such acts is clear and pressing. Proliferation of similar actions would undoubtedly produce serious adverse consequences for the reputation and dignity of the profession as well as a general erosion of the principle that our society accomplishes justice through adherence to the "rule of law." As for the protection of the public, the misconduct in issue does not present the dangers normally associated with attorney victimization of clients or the public at large. Sanctions imposed by this Court in similar cases support a harsher response than the reprimand issued below. For instance, in Mississippi State Bar v. Smith, 577 So.2d 1249 (Miss. 1991), this Court suspended an attorney for 60 days for deceiving a court by filing a false acknowledgment of the bank's receipt of settlement funds. A two year suspension was imposed on an attorney who deceived the court and the client in pursuit of a pecuniary gain. Goeldner v. Mississippi State Bar Ass'n, 525 So.2d 403 (Miss. 1988).
After thoughtful consideration of these factors, we are of the opinion that the public reprimand imposed by the complaint tribunal was inappropriate. For Mathis' deceptions, which constituted violations of the provisions discussed above, it is ordered that he be suspended from the practice of law for a period of one (1) year. It is further ordered that Mathis comply with the Tribunal order assessing expenses and fees against him.
VIOLATIONS OF THE CODE OF PROFESSIONAL RESPONSIBILITY AND THE RULES OF PROFESSIONAL CONDUCT AFFIRMED: SUSPENSION FROM THE PRACTICE OF LAW FOR A PERIOD OF 180 DAYS IS VACATED AND JAMES H. MATHIS IS SUSPENDED FROM THE PRACTICE OF LAW FOR A PERIOD OF ONE (1) YEAR, EFFECTIVE 20 DAYS FROM THIS DATE.
*1223 HAWKINS, C.J., PRATHER, P.J., PITTMAN, BANKS, and McRAE, JJ., concur.
SULLIVAN, J., dissents with separate written opinion joined by SMITH, J.
ROBERTS, J., not participating.
SULLIVAN, Justice, dissenting:
While I agree with the majority that Mathis' repeated, deliberate falsehoods and misrepresentations, to both the court and opposing counsel, and his admitted concealment of evidence constitute violations of DR 1-102(A)(1), (4), (5), and (6), DR 7-102(A)(3) and (5), Rules 8.4(a), (c), and (d), 3.3(a), and the statutory attorneys' oath, I cannot agree that suspension for one (1) year is an appropriate sanction for professional misconduct of such magnitude.
The majority, in its finding that Mathis violated the above-cited provisions of the former Code of Professional Responsibility, the current Rules of Professional Conduct, and the attorneys' oath, explicitly and/or implicitly found Mathis had:
1. engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation [DR 1-102(A)(4); Rule 8.4(c)];
2. engaged in conduct that was prejudicial to the administration of justice [DR 1-102(A)(5); Rule 8.4(d)];
3. engaged in conduct that adversely reflects on his fitness to practice law [DR 1-102(A)(6)];
4. concealed and knowingly failed to disclose, in the representation of his client, that which he was required by law to reveal [DR 7-102(A)(3); Rule 3.3(a)(2)];
5. knowingly made false statements of fact in the representation of his client [DR 7-102(A)(5); Rule 3.3(a)(1)];
6. violated disciplinary rules which govern our profession [DR 1-102(A)(1); Rule 8.4(a)]; and
7. failed to demean himself with all good fidelity to the court [Miss. Code Ann. § 73-3-35 (Supp. 1992)].
This laundry list of ethical violations, in my view, warrants a sanction more severe than a one (1) year suspension from the practice of law.
Mathis maintained, even at the summary judgment motion hearing, that what he had done was not contradictory to our rules of ethics. Mathis stated in his brief that he believed his retention of Dr. Francisco was in connection with another case (the anticipated criminal action against Mrs. Laughlin) and was for another client (J.R. Laughlin, Jr.), therefore he could not reveal information relating to the autopsy in discovery proceedings for the civil case in which he represented Mrs. Laughlin. If this had been the case, Mathis should have handled the situation pursuant to the applicable Code (now Rules) provisions governing conflicts of interest. If the autopsy revealed nothing detrimental to Mrs. Laughlin, as Mathis claimed, Mrs. Laughlin would have benefitted from disclosure of the autopsy results in her civil suit against the non-paying insurance companies.
But Mathis claimed he had to protect Mrs. Laughlin from an anticipated specious homicide charge, therefore he could not reveal the autopsy results obtained in connection with the "criminal case." In other words, the responsibilities arising from his "representation" of J.R. Laughlin, Jr., in the anticipated criminal case, limited his representation of Becky Laughlin in the civil case, in violation of Rule 1.7(b) and DR 5-105. Obviously no consultation was made and no knowing and informed consent was obtained from Mrs. Laughlin, as required by Rule 1.7(b)(2) and DR 5-105(C), as she knew nothing about the autopsy arranged by Mathis and J.R. Laughlin, Jr. The very argument propounded by Mathis in defense of his actions actually implicates violations of additional Rules and Code provisions.
As stated by the majority, the factors generally considered by this Court when determining sanctions for professional misconduct are (1) the nature of the misconduct; (2) the need to deter similar misconduct; (3) preservation of the dignity and reputation of the profession; (4) protection of the public; and (5) sanctions imposed in similar cases. Steighner v. Mississippi *1224 State Bar, 548 So.2d 1294, 1297-98 (Miss. 1989).
The nature of Mathis' misconduct is repeated, deliberate, and intentional deceit of his client, opposing counsel, and the court. Indeed, the majority found
Mathis assisted his client, Becky Laughlin, in committing a fraud upon the court. Although Mrs. Laughlin was not aware of the deception, Mathis was. Mathis subverted the truth-finding process which our adversary system is designed to implement. Rather than his client coercing him into being a party to fraud on the court, Mathis coerced his client.
If the courts and other attorneys cannot trust lawyers to use our adversary system to the client's advantage while maintaining honesty and integrity, how can members of the public be expected to put such trust in attorneys? The urgent need to deter such conduct among members of the legal community is apparent to me, as is the equally vital necessity of preserving the dignity and reputation of the legal profession. Regarding protection of the public, the majority found "the misconduct in issue does not present the dangers normally associated with attorney victimization of clients or the public at large." I take this to mean that Mathis' deceit was not motivated by the thought of pecuniary gain at the expense of his client. Nonetheless, Becky Laughlin is subject to financial detriment caused by Mathis' deceit  Mathis and his client were ordered to pay the defendant insurance companies $40,969.85 in sanctions for unreasonable multiplication of proceedings. A mere "time out" in response to the continuing, intentional deceit at issue here is a very real threat to the public, who every day entrusts personal matters of utmost importance to lawyers.
Reviewing sanctions imposed in similar cases, it is clear that deception is a valid ground for disbarment. This Court disbarred an attorney who deceived the court and his client regarding a settlement agreement.[1]Culpepper v. Mississippi State Bar, 588 So.2d 413 (Miss. 1991). Disbarment was also imposed on an attorney who deceptively misrepresented his law school credentials and admission to another state's bar in applying for employment with a law firm. Barfield v. Mississippi State Bar Ass'n, 547 So.2d 46 (Miss. 1989).
We have previously found the guidelines provided by the American Bar Association's Standards For Imposing Lawyer Sanctions helpful in our determination of appropriate sanctions for professional misconduct. Mississippi Bar v. Strauss, 601 So.2d 840, 845 (Miss. 1992); Mississippi State Bar v. Blackmon, 600 So.2d 166, 173 (Miss. 1992); Culpepper, 588 So.2d at 421; Foote v. Mississippi State Bar Ass'n, 517 So.2d 561, 564 (Miss. 1987). These ABA Standards set forth the following general factors to be considered: (a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer; and (d) the existence of aggravating or mitigating factors. ABA Standards For Imposing Lawyer Sanctions, § 3.0 (1986).
Mathis violated his duty of candor toward the tribunal via continuing, intentional misrepresentations to the court and opposing counsel with the purported belief that he was acting within the bounds of our ethical rules. The injury extends beyond the obstruction or impediment of justice and encompasses the monetary sanctions imposed on Mathis' client, waste of time and money for all parties and courts involved, and other intangible injuries, such as damage to the reputation of the legal profession and disrespect for the court. The lone mitigating factor, absence of prior ethical violations, is weak as it consists of "the mere absence of a certain aggravating factor"  the presence of prior disciplinary offenses. Foote, 517 So.2d at 565.
In cases involving conduct that is prejudicial to the administration of justice or that involves dishonesty, fraud, deceit or misrepresentation to a court, the ABA Standards recommend the following sanctions:

*1225 § 5.11 Disbarment is generally appropriate when: . .. (b) a lawyer engages in any intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.
* * * * * *
§ 6.11 Disbarment is generally appropriate when a lawyer, with the intent to deceive the Court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on a legal proceeding.
* * * * * *
§ 6.12 Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.
ABA Standards For Imposing Lawyer Sanctions (1986).
Mathis violated the Code of Professional Responsibility, now the Rules of Professional Conduct, and the statutory attorneys' oath. The ABA Standards recommend suspension when a lawyer merely has knowledge that false statements are submitted to a court or knows that material information is improperly being withheld, and takes no remedial action. Mathis went far beyond this type of nonfeasance. His intentional conduct evinced dishonesty, deceit, and misrepresentations that seriously adversely reflect on his fitness to practice law. Mathis' false statements and improper withholding of material information caused injury to his client by subjecting her to monetary sanctions and seriously impeded the legal proceedings in which he was involved.
"Integrity, honor and scrupulously fair dealing are the hallmarks of an attorney." Brumfield v. Mississippi State Bar Ass'n, 497 So.2d 800, 807 (Miss. 1986), cert. denied, 481 U.S. 1017, 107 S.Ct. 1896, 95 L.Ed.2d 502 (1987). I believe Mathis' conduct reveals him to be so utterly lacking in these characteristics that he is unfit to practice law. "It is only by enforcing these Rules [of Professional Conduct] that the law and the legal profession will be improved. Neglect in the observance of these Rules `compromises the independence of the profession and the public interest which it serves.'" Flowers v. State, 601 So.2d 828, 833 (Miss. 1992), quoting Rules of Professional Conduct, Preamble. Furthermore, the primary purpose of sanctions for attorney misconduct "is to `vindicate in the eyes of the public the overall reputation of the bar.'" Strauss, 601 So.2d at 845, quoting Mississippi State Bar Ass'n v. A Mississippi Attorney, 489 So.2d 1081, 1084 (Miss. 1986). The discipline imposed by the majority falls short of this goal.
In light of the ABA Standards For Imposing Lawyer Sanctions and previous disbarments imposed by this Court for intentional deceit, in my view disbarment is justified by dishonesty of this magnitude. I therefore dissent.
SMITH, J., joins this dissent.
NOTES
[1] Culpepper's prior similar misconduct, for which he had been sanctioned, was considered an aggravating factor.