684 So.2d 615 (1996)
The MISSISSIPPI BAR
v.
R. Charles ROBB.
No. 93-BA-01051-SCT.
Supreme Court of Mississippi.
June 20, 1996.
Rehearing Denied September 19, 1996.
*616 Michael B. Martz, Jackson, for appellant.
R. Charles Robb, Jackson, pro se.
James P. Cothren, Cothren Law Firm, Jackson, for appellee.
En Banc.
*617 MILLS, Justice, for the Court:

I.

INTRODUCTION
The Mississippi Bar filed a Formal complaint against R. Charles Robb, a Mississippi attorney, on August 19, 1992, alleging the violation of four provisions of the Mississippi Rules of Professional Conduct.
The Complaint Tribunal heard the case on April 8, 1993. It issued an opinion and judgment ruling against Robb on July 30, 1993.
The Mississippi Bar, disappointed with the Tribunal's ruling, filed a notice of appeal assigning the following issues:
1. Whether the public reprimand imposed by the Complaint Tribunal was a sufficient sanction given the attorney's deceitful misconduct.
2. Whether the Complaint Tribunal erred in failing to impose discipline after finding there was a violation of Rule 3.4, Mississippi Rules of Professional Conduct.
3. Whether the Complaint Tribunal erred in failing to find a violation of Rule 4.1, Mississippi Rules of Professional Conduct.
Robb cross-appealed the judgment against him assigning the following issues:
A. Are the Conclusions of Law drawn by the Tribunal in error as a matter of law with regard to Rule 3.4(c), Mississippi Rules of Professional Conduct?
B. Was the Tribunal correct in finding that Robb made no false statement of material fact or law to a third party (Rule 4.1(a), MRPC) and if so does such finding merge the alleged violation of Rule 8.4(c), Mississippi Rules of Professional Conduct into such a finding?
C. Are the Conclusions of Law drawn by the Tribunal in error as a matter of law with regard to Rule 4.4, Mississippi Rules of Professional Conduct?
D. Was actual or constructive notice to Prisock, Mr. Benefield's representative, sufficient weight to change the proof to less than "clear and convincing" that Robb violated Rule 8.4(c), Mississippi Rules of Professional Conduct or any of the Mississippi Rules of Professional Conduct?
E. Do the alleged violations of Rule 8.4(a) & (d), Mississippi Rules of Professional Conduct merge into the specific violations charged?
F. Whether there were resultant damages from actions or inactions of Robb or did the damages result from the intervening actions or inactions of Prisock?
G. Is the weight of the evidence sufficient to support Prisock's actions or inactions to establish by "clear and convincing evidence" that Robb violated any Mississippi Rules of Professional Conduct which caused Mr. Benefield any damage?

II.

FACTS
Keith Benefield and his wife, Lola "Cookie" Westbrook, were divorced in 1986 and he was ordered to pay her $1,300 per month for fifteen years as a part of their property settlement agreement. Benefield, who had moved to Alabama, became delinquent in his payments. Westbrook then hired attorney R. Charles Robb to represent her in collecting the arrearage. On May 3, 1990, Robb wrote Benefield a letter in an attempt to collect the alleged arrearage owed. Robb warned Benefield of the prospect of contempt and imprisonment and asked that he make contact with Robb to discuss the matter. Benefield contacted Robb once but they were unable to resolve the dispute. Benefield then retained Kerry Prisock of Jackson to represent him.
Robb filed a contempt action against Benefield and made several efforts to set the matter for hearing. Prisock was successful in having the matter continued on three occasions. Finally, the parties appeared before Hinds County Chancellor Patricia D. Wise on January 28, 1991. It appeared to Chancellor *618 Wise that the matter would be somewhat controversial and she decided not to hear it on her ex parte day. Chancellor Wise requested that the parties try to reach an agreement prior to the case being reset, else the court would have to decide the matter. The parties failed to reach an agreement and the case was reset for March 15, 1991.
On February 28, 1991, Prisock advised Benefield that he had to be out of town on March 15 and would obtain a continuance of the March 15 hearing. Robb objected to any continuance, as his attempts to resolve this matter had already been thrice delayed.
On March 11, 1991, according to Benefield, Prisock's secretary advised Benefield that a continuance was granted and a new setting would be scheduled when Prisock returned from his trip. Prisock filed an untimely motion for continuance on the same date.
Prisock's motion for continuance was never called up for hearing; no order of continuance was entered. To his credit, Robb advised the court that a motion for continuance had been filed in the case by Prisock. The hearing proceeded on March 15, 1991. Due to lack of opposition, Robb was successful in obtaining a contempt order against Benefield on April 3, 1991. Neither the Clerk of the Chancery Court nor Robb provided Prisock or Benefield with a copy of the order. The proposed order was prepared by Robb and submitted to the chancellor on March 19, 1991. Robb did not send a copy of the proposed order to Prisock "for criticism as to form only" as required by Uniform Chancery Court Rule 5.04.
On April 5, 1991, Prisock notified Benefield that he had received a letter from Robb, dated April 5, 1991, requesting that Benefield appear in his office on a mutually agreeable date for document production and a deposition.
Prisock and Robb thereafter engaged in several telephone calls concerning the deposition and the possibility of settling the dispute. All discussions between the two attorneys, prior to the deposition date, concerned the amount of money Benefield was to pay his ex-wife. Prisock threatened to file a petition in bankruptcy for Benefield. Prisock was operating under the assumption that the parties would amicably resolve their differences and submit a proposed agreed order to the court. At no time did Robb inform Prisock that the court had already made a decision and that an order had already been entered.[1]
From April until August 17, 1991, the day of the purported deposition in Robb's office, Prisock's understanding was that he was to bring his client, and his client's tax records and other documents, to Robb's office for the purpose of negotiating a settlement of the dispute.
Prisock asked Robb if Prisock needed to get a court reporter for the August 17 deposition. Robb made it clear to him that Prisock did not need to make any arrangements for a court reporter, but did not expressly say that he would get one.
When Benefield and Prisock arrived at Robb's office on August 17, 1991, no court reporter was present. Prisock asked about the absence of a court reporter. Robb responded that he would make the deposition informal and would use only a tape recorder. Robb asked to see the documents brought by Benefield and asked if it was agreeable for him to make copies of them after the deposition. While the parties were engaged in a brief conversation regarding Benefield's financial condition and situation, the telephone rang. Robb answered with the phrase, "We're not open today." Robb had previously arranged with the Hinds County Sheriff's Office to use this statement to them as a signal that Robb's quarry, Benefield, was in the office. Less than ten minutes later, two Hinds County deputy sheriffs arrived at Robb's office and arrested Benefield.
Prisock asked one of the deputies the basis for the arrest. The deputy showed him the contempt order which had been furnished by Robb. Prisock then turned to Robb at which time Mr. Robb handed him a copy of the order. Benefield inquired "What's going *619 on?" as he was being arrested and escorted from the lawyer's office. Prisock assured his client that he would follow him shortly.
After the deputies left with Benefield, Prisock asked Robb, "Where do we go from here?" Robb said that the next step was for Benefield to pay $10,000 to purge himself of the contempt. Stunned by the events he had witnessed, Prisock did not argue with Robb.
Benefield was held at the Detention Center in Hinds County and then at the Penal Farm for eight days until he was able to purge himself of the contempt and obtain a release.
According to Prisock, had he known his client was going to be arrested, he would not have brought him to Robb's office. He had been led to believe that they were meeting in an effort to resolve the dispute out of court, without having any indication that the chancellor had already decided the matter. He stated that at no time over the four-month period preceding Benefield's arrest had Robb given him any indication that the matter had been decided by the chancellor.
On August 30, 1991, Benefield discharged Prisock and hired other counsel.
In September 1991, Robb proceeded to have Benefield's wages at Prudential Insurance garnished.
On September 30, 1991, Chancellor Wise granted a stay of a second motion for contempt filed by Robb and appointed Special Master Charles Brewer to hear the case and to make a recommendation.
On October 29, 1991, Brewer filed a report in which he recommended setting aside the original order obtained by Robb as a result of the hearing of March 15, 1991, and entered on April 3, 1991. In the report, Brewer found that Prisock had filed a motion for continuance, but that he never called it up for hearing, and that he and his secretary were under the impression that a continuance had been granted when it had not; that Robb had informed Prisock that he did not agree to a continuance; that Robb was not notified of a setting on the motion, and did not receive an order of continuance from the court; that consequently Robb proceeded with the hearing on March 15, though he did advise the court that Prisock had filed a motion but that no order was entered; that the Court granted a civil contempt order which was entered on April 3, 1991; and that negotiations continued between Robb and Prisock without Prisock ever being advised by anyone that an order had been entered.
Brewer further found that Robb failed to comply with Uniform Chancery Court Rule 5.04, which required him to submit a proposed judgment/order to opposing counsel for criticism as to form, and then to the chancellor within ten days after being directed to do so; that Prisock should have been more diligent in securing the continuance before leaving town; and that under the circumstances, the order of April 3, 1991, should be set aside and the money paid held in abeyance until a hearing on the merits. Chancellor Wise entered an order setting aside the order for civil contempt on November 13, 1991.
After the contempt order was set aside, Benefield sued Robb for damages on the grounds that Robb had fraudulently lured him to Mississippi and had under false pretenses caused his incarceration. Robb settled this action by paying Benefield $8,000.00.
Robb's client, Westbrook, ultimately lost her claim for back payments owed in the amount of $58,900.17 and future obligations owed to her of $135,000.00, as a result of the lower court's finding that Robb's efforts to execute on the contempt order were improper. It appears from the record that Benefield did pay her $6,000.00 as a final settlement between the two.
Finally, in April of 1993, after having paid $8,000.00 to Benefield to settle the personal action against him, Robb filed a pro se complaint against his client, Westbrook, seeking damages in the amount of $8,000.00, plus attorney's fees of $3,750.00 and out-of-pocket expenses of $650.00, for a total of $12,400.00. After extensive motion hearings, this matter was dismissed by agreed order in May of 1994.
At his hearing before the Complaint Tribunal, Robb objected to testifying and sought to invoke the Fifth Amendment. This objection was overruled and following the hearing *620 of evidence the Complaint Tribunal found as follows:
By clear and convincing evidence, Robb has violated the following Rules of Professional Conduct for the Bar:
A. Rule 3.4(c), which provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;
B. Rule 4.4, which provides that in representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person; and
C. Rule 8.4(c), which provides that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation, in that he engaged in conduct involving deceit and misrepresentation.
Additionally, the evidence is clear and convincing that by engaging in conduct involving deceit and misrepresentation, Robb thereby violated Rule 8.4(a), which provides that a lawyer shall not violate a rule of professional conduct, and Rule 8.4(d), which provides that a lawyer shall not engage in conduct prejudicial to the administration of justice.
By clear and convincing evidence, it is the opinion of this Tribunal that Robb has demonstrated unprofessional and unethical conduct which constitutes cause for the imposition of discipline.
The Complaint Tribunal ordered a public reprimand and assessed costs of $69.83 against Robb.
The Mississippi Bar appealed the decision of the Complaint Tribunal seeking more severe discipline in the form of a lengthy suspension. Robb cross-appealed seeking reversal of the findings of the Complaint Tribunal.

III.

STANDARD OF REVIEW
"The Supreme Court of Mississippi (the Court) has exclusive and inherent jurisdiction of matters pertaining to attorney discipline, reinstatement, and appointment of receivers for suspended and disbarred attorneys... . Rule 1 of the Rules of Discipline for the Mississippi State Bar (1984). On appeal, this Court "shall review the entire record and the findings and conclusions of the Tribunal, and shall render such orders as the Court may find appropriate." Foote v. Mississippi State Bar Association, 517 So.2d 561, 564 (Miss. 1987) (quoting Rule 9.4 of the Mississippi Rules of Professional Conduct (1984)). When reviewing disciplinary matters, this Court reviews the evidence de novo and no substantial evidence or manifest error rule shields the Tribunal from scrutiny. Watkins v. Mississippi Bar, 589 So.2d 660, 664 (Miss. 1991); Foote, 517 So.2d 561, 564 (Miss. 1987); Mississippi State Board of Psychological Examiners v. Hosford, 508 So.2d 1049, 1054 n. 4 (Miss. 1987); Vining v. Mississippi State Bar Association, 508 So.2d 1047, 1049 (Miss. 1987). However, this Court is not prohibited from giving deference to the findings of the Tribunal. Mississippi State Bar v. Odom, 566 So.2d 712, 714 (Miss. 1990).
While the review of evidence is de novo, deference is given to the Tribunal's findings due to its exclusive opportunity to observe the demeanor and attitude of the witnesses, including the attorney, which is vital in weighing the evidence. Broome v. Mississippi Bar, 603 So.2d 349, 353 (Miss. 1992); Mississippi State Bar v. Strickland, 492 So.2d 567 (Miss. 1986).
Punishment for any violation of the Rules of Discipline is considered and imposed on a case-by-case basis and is not governed by a set standard. Hosford, 508 So.2d at 1049; A Mississippi Attorney v. Mississippi State Bar, 453 So.2d 1023 (Miss. 1984). This Court "will not hesitate to impose substantial sanctions upon an attorney for any act which evinces want of personal honesty and integrity or renders such attorney unworthy of public confidence." Foote, 517 So.2d at 564; Brumfield v. Mississippi State Bar Association, 497 So.2d 800, 808 (Miss. 1986).

IV.

LAW
The dispositive issues in this case are discussed as follows:

*621 A.

Whether the Complaint Tribunal's Conclusions of Law are correct in regards to finding a Rule 4.4 MRPC violation has been committed?
Rule 4.4 of the Mississippi Rules of Professional Conduct states:
Rule 4.4 RESPECT FOR RIGHTS OF THIRD PERSONS
In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such person.
Rule 4.4, Mississippi Rules of Professional Conduct (M.R.C.P.). The comment thereto provides in part:
Responsibility to a client requires a lawyer to subordinate the interests of others to those of the client, but that responsibility does not imply that a lawyer may disregard the rights of third persons....
Comment to Rule 4.4, M.R.C.P.
The Complaint Tribunal found that:
Robb ... violated Rule 4.4 in that he had a substantial purpose to burden Benefield. And that  to put it in plain language, that a substantial purpose of Robb's was to get Benefield back in the state of Mississippi where he could have him incarcerated and thereby burdening him with being incarcerated.
This Court agrees with the Tribunal's conclusion. It is clear that on August 17, 1991, at the time of the deposition, the only substantial purpose of Robb was to have Benefield incarcerated and then released, only if Benefield could come up with $10,000.00 to purge himself of the contempt.
Moreover, it seems odd that Robb would argue that he had another purpose, to depose Benefield, when in fact the alleged deposition only took a few minutes. There was not a court reporter present, nor did Robb offer into evidence any part of the tape recorded deposition. In fact, Robb had never discussed the contempt order with Prisock, nor had he ever introduced it as leverage in negotiating his client's position. More specifically, Robb did not even discuss the possibility of a settlement with Prisock at the deposition.
This Court concludes that Robb exhibited no compelling set of facts which would indicate there was another means for using the contempt order, nor was there another substantial purpose at the time of the alleged deposition other than to embarrass and burden Benefield. Therefore, it is clear that Robb intentionally violated Rule 4.4, M.R.C.P.

B.

Given the deceitful conduct of Robb, the Complaint Tribunal erred in only issuing a public reprimand.
The present case is replete with violations of Rule 8.4(c) by Robb. His first act of deceit was presenting an unapproved order to Chancellor Wise, which also violated Rules 8.4(a) and (d) of the M.R.C.P. Robb continued his acts of deceit by luring Benefield to his office to have him arrested.
Robb was deceitful in his dealings with Prisock. As evidenced by Robb's letter to Prisock requesting deposition dates and the follow-up phone call discussing the deposition dates and a court reporter, Robb was deceitful and misrepresented his intentions. Robb was aware that Prisock had no knowledge of the contempt order and that Prisock and Benefield were acting on the good faith assumption that the parties were trying to reach a settlement.
On July 31, 1991, when Robb notified the sheriff's department of Benefield's upcoming presence on August 17, 1991, he agreed to a "code" to let the deputy sheriff know of Benefield's presence. This was deceitful and indicates personal dishonesty and a lack of integrity. Misrepresentations by omission are as egregious as overt misrepresentations.
In Mississippi Bar v. Mathis, 620 So.2d 1213, 1219 (Miss. 1993), the Court followed the rule that "[t]his Court will not hesitate to impose substantial sanctions upon an attorney for any act which evinces want of personal honesty and integrity or renders such *622 attorney unworthy of public confidence," quoting Foote v. Mississippi State Bar, 517 So.2d 561, 564 (Miss. 1987).
In Mathis a civil action for bad faith denial of insurance was pending. Mathis was representing the family of the insured. He failed to disclose to the Court or opposing counsel that an autopsy had been performed. The Bar alleged that this conduct constituted a violation of DR1-102(A)(1), (4), (5), (6), of the Code of Professional Responsibility and Rule 8.4(a), (c) and (d) of the M.R.C.P. 620 So.2d. at 1220.
The Complaint Tribunal found that Mathis was guilty of violating Rule 3.3(a)(1) and (4) of the M.R.C.P. and the statutory oath of attorneys. A public reprimand was imposed. The Bar appealed on the grounds that a more severe penalty should be imposed. The Supreme Court conducted a de novo review and found that Mathis had violated Rules 8.4(a), (c) and (d) of the M.R.C.P. and DR1-102(A)(1), (4) and (6) of the Code of Professional Responsibility. The Court imposed a one-year suspension from the practice of law.
In determining whether the Complaint Tribunal had imposed the appropriate discipline, the Court stated that the purposes of punishment for ethical violations were (1) to punish the wrongdoer, (2) to deter further violations on the part of the offender and the general community of lawyers, and (3) to reinforce the confidence of the public in the ability of the legal profession to govern itself. The third purpose is important because the profession "assumes the responsibility of governing its members. Therefore, the public's confidence and faith in the integrity of the entire Bar is dependent upon our willingness to impose appropriate sanctions on our members who have violated the Code of Professional Responsibility" (now Mississippi Rules of Professional Conduct). Id. at 1222, quoting Pitts v. Mississippi State Bar Assoc., 462 So.2d 340, 343 (Miss. 1985).
When imposing discipline, this Court considers several factors. They are:
(1) Nature of the misconduct involved;
(2) Need to deter similar misconduct;
(3) Preservation of dignity and reputation of the legal profession;
(4) Protection of the public; and
(5) Sanctions imposed in similar cases.
Mathis, 620 at 1222; Mississippi State Bar v. Blackmon, 600 So.2d 166, 173 (Miss. 1992), and Mississippi State Bar v. Smith, 577 So.2d 1249, 1251 (Miss. 1991).
In reviewing Mathis' conduct and the sanction imposed, the Supreme Court found that "the nature of Mathis' conduct was deceit. The need to deter such acts is clear and pressing." 620 So.2d at 1222.
In the instant case, the Tribunal found that Robb had engaged in conduct involving deceit and misrepresentation, but only issued a public reprimand.
Deceit, whether visited on a court or an attorney who is an officer of the court or a private citizen, should be dealt with in a firm manner. To allow an attorney to act in such a manner without imposing appropriate sanctions is tantamount to condoning acts of deceit.
On many occasions, the Court has not hesitated to impose suspension in cases involving acts of dishonesty, fraud, deceit, and/or misrepresentation. It has held that such acts are grounds for disbarment or suspension. See Clark v. Mississippi State Bar Assoc., 471 So.2d 352 (Miss. 1985) (disbarred for misappropriation of funds); Brumfield v. Mississippi State Bar Assoc., 497 So.2d 800 (Miss. 1986) (disbarred for defrauding family members); Culpepper v. Mississippi State Bar, 588 So.2d 413 (Miss. 1991) (disbarred for fraudulent acts). See also Underwood v. Mississippi Bar, 618 So.2d 64 (Miss. 1993) (one-year suspension for dishonesty and fraud; lying to client); Mathes v. Mississippi Bar, 637 So.2d 840 (Miss. 1994) (six-month suspension; failure to turn over funds to court); Mississippi Bar v. Mathis, 620 So.2d 1213 (Miss. 1993) (one-year suspension; deceit and fraud).

C.

A disciplinary sanction should have been issued once the Tribunal found a violation of Rule 3.4 of the Rules of Professional Conduct.
The Complaint Tribunal found that Robb had violated Rule 3.4(c) of the Mississippi *623 Rules of Professional Conduct, which provides in part:
(c) A lawyer shall not ... knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.
In Mathes v. Mississippi Bar, 637 So.2d 840 (Miss. 1994), Court held "[t]he need to deter ... attorneys from ignoring court orders is self-evident. Also self-evident is the damage such disobedience causes to the legal profession, and the need to protect the public from attorneys who would fail to respect a court's authority." Id. at 848.
In Mathes, the attorney failed to follow a court order requiring him to turn over funds to the bankruptcy trustee. The Court ordered a six-month suspension from the practice of law.
In the present case, Robb violated Rule 3.4(c). He failed to follow Rule 5.04 of the Uniform Chancery Court Rules. Whether one fails to follow a court order or a court rule, punishment should be meted out. As this Court stated in Mathis, attorneys need to be deterred from ignoring court orders.
Robb tried to relieve himself of his duty by placing blame on Prisock. The Tribunal correctly found that Prisock failed to act in the best interests of his client. However, Robb's actions can not be excused by the indiscretions of another attorney. Robb failed to follow a specific rule of court in not submitting the order to Prisock for his approval. Had he done so, court time would not have been wasted and a special master would not have been needed. Robb's initial failure to follow a rule of the court, which could have been cured by timely service of the order on Prisock, or by other remedial measures, was compounded by his ensuing acts of deceit and misrepresentation, warrants the imposition of a public reprimand and a lengthy suspension.

D.

The Tribunal erred in not finding a violation of Rule 4.1.
Rule 4.1 of the Rules of Professional Conduct states in part: "In the course of representing a client, a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person... ."
Robb, through his correspondence with Prisock, alleged that a deposition was to be taken. He was aware of the ignorance of Prisock and Benefield of the entry of the contempt order. Robb's purpose in having Benefield come to Mississippi was to have him arrested, not to take a deposition. This was evidenced by his communication with the sheriff's department well before the August deposition.
Robb misled Prisock and Benefield by not revealing relevant facts to them. Whether misleading or actually making a false statement, the acts and the results are the same  a violation of Rule 4.1 occurred. This Court has the authority to so find and to issue sanctions accordingly. The legal profession is on a downward slide. Robb's actions, and similar "Rambo" tactics used by others in the legal profession, are part of that slide. The end does not justify the means. True, Benefield had an obligation to his ex-wife. He had not kept that obligation. However, the "means" used by Robb to accomplish the "end" cannot be tolerated. Our society is one of law, not expediency. This message must be repeated at every opportunity. This case presents such an opportunity. Robb deserves to be sanctioned for this violation as well as his other violations of the Rules of Professional Conduct.

E.

Robb's Motions to Strike.
Robb moved this Court to strike from the findings of fact all references to matters concerning the report of the special master and the order entered thereupon. Robb asserts that before the time for appeal ran on the report and order, he was discharged as attorney for Westbrook. He argued that his substantive and procedural due process rights to challenge the report and order were denied.
This Court reviews de novo the evidence in an attorney disciplinary proceeding. Mathis, *624 620 So.2d at 1219. The special master found Robb in violation of Rule 5.04 Uniform Chancery Court Rules for failing to present opposing council with a copy of the contempt order for criticism as to form only. Robb admits that he did not present Prisock with a copy of the contempt order.
Robb also asserts that the Mississippi Bar did not include a corresponding reference to excerpts filed in this Court with respect to the record and the transcripts and seeks to strike the Bar's briefs. This motion is without merit and borders on frivolity.

V.

CROSS-APPEAL
After review of the assignments of error presented by Robb on cross-appeal, we determine his claims to be meritless and hereby deny the cross-appeal.

VI.

CONCLUSION
Before the Complaint Tribunal and this Court, Robb has sought at every point to blame others for his acts of deceit. His failure to furnish obvious information to counsel opposite and his deceit in arranging for the arrest of Benefield merit a suspension from the practice of law. Further, his acts following the arrest of Benefield bring disfavor upon the legal profession and must be considered in imposing sanctions. Finally, his demeanor and attitude before this Court, and his apparent disregard for the rights of others, substantiate this Court's opinion that Robb should be suspended from the practice of law. Therefore, we hereby find that R. Charles Robb should be suspended from the practice of law for a period of six months.
ON DIRECT APPEAL: REVERSED AND RENDERED. R. CHARLES ROBB IS SUSPENDED FROM THE PRACTICE OF LAW FOR SIX MONTHS. ORDER OF SUSPENSION ENTERED.
ON CROSS-APPEAL: DENIED.
DAN M. LEE, C.J., PRATHER and SULLIVAN, P.JJ., and PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion.
McRAE, Justice, dissenting:
In order to remain consistent with past decisions concerning attorney discipline, the conduct forming the basis of the charges against Robb should warrant no more than two months suspension from the practice of law. See Mississippi State Bar v. Smith, 577 So.2d 1249 (Miss. 1991) (ordering sixty (60) day suspension and period of probation to attorney for depositing proceeds of wrongful death settlement into personal account and distributing money to beneficiaries without court permission); Pitts v. Mississippi State Bar Ass'n, 462 So.2d 340, 341 (Miss. 1985) (ordering thirty (30) day suspension and public reprimand for attorney's delayed deposit of client's insurance check into savings account in violation of court order); see also Goodsell v. Mississippi Bar, 667 So.2d 7, 13-14 (Miss. 1996) (McRae, J., dissenting, joined by Lee, C.J., and Roberts, J.) (urging this Court to be consistent in its rulings on matters of attorney discipline). Accordingly, I dissent.
NOTES
[1] Robb further violated Section 13-1-263 of the Mississippi Code of 1972, as amended, which states as follows, regarding the examination of a non-resident judgment debtor: "... a certified copy of the judgment shall be attached to the written Motion for Examination."