702 So.2d 423 (1997)
In re Petition of Robert Charles ROBB, III, for Reinstatement to Practice Law.
No. 97-BR-00032-SCT.
Supreme Court of Mississippi.
November 26, 1997.
R. Charles Robb, III, Vicksburg, pro se.
Michael B. Martz, Jackson, for respondent.
En Banc.
MILLS, Justice, for the Court:

STATEMENT OF THE CASE
¶ 1. On June 20, 1996, the Mississippi Supreme Court suspended Robert Charles Robb III from the practice of law in the State of Mississippi for six months, effective July 1, 1996. See Mississippi Bar v. Robb, 684 So.2d 615 (Miss. 1996). The Court found Robb to be in violation of Uniform Chancery Court Rule 5.04 and Rules 3.4(c), 4.1(a), 4.4, and 8.4(a),(c) & (d) of the Mississippi Rules *424 of Professional Conduct. The suspension stemmed from an incident where Robb obtained a civil contempt order against the opposing party in a property settlement matter. Robb failed to notify opposing counsel of the order and "ambushed" the opposition at a deposition by prearranging for the deputy sheriff to arrive and arrest the opposing party.
¶ 2. After a bar complaint was filed, the Complaint Tribunal ordered a public reprimand. Aggrieved, the Mississippi Bar appealed the case to the Mississippi Supreme Court. The Court ordered a six-month suspension for Robb. Following his suspension, Robb petitioned the United States Supreme Court for Writ of Certiorari challenging this Court's order. On January 21, 1997, Robb filed a Petition for Reinstatement to the Practice of Law in this State pursuant to Rule 12 of the Rules of Discipline for the Mississippi State Bar. On February 18, 1997, the Mississippi Bar filed an answer recommending that the Court deny Robb's Petition for Reinstatement.

ANALYSIS
¶ 3. "Rule 12 of the Rules of Discipline governs the reinstatement of attorneys who have been disbarred or suspended." See In re Petition of Medley, 687 So.2d 1219 (Miss. 1997); see also Burgin v. Mississippi State Bar, 453 So.2d 689, 690 (Miss. 1984). Rule 12.7 requires:
All reinstatement petitions shall be addressed to the Court, shall state the cause or causes for suspension or disbarment, give the names and current addresses of all persons, parties, firms, or legal entities who suffered pecuniary loss due to the improper conduct, the making of full amends and restitution, the reasons justifying reinstatement, and requisite moral character and legal learning to be reinstated to the privilege of practicing law.
Rules of Discipline for the Mississippi State Bar, Rule 12.7.
¶ 4. The fundamental issue posed by a petition for reinstatement is the attorney's rehabilitation in conduct and character since disbarment or suspension. Burgin, 453 So.2d at 691. The burden is on the Petitioner to prove that he has been rehabilitated sufficiently to entitle him to reinstatement. Id. The burden of proof of a suspended attorney petitioning for reinstatement is not the same or as great as that demanded of one who has been disbarred. Haimes v. Mississippi State Bar, 551 So.2d 910, 912 (Miss. 1989).

FULL RESTITUTION AND AMENDS TO THOSE SUFFERING PECUNIARY LOSS
¶ 5. In support of his petition, Robb submits that all civil suits arising from his unprofessional conduct have been settled or dismissed with prejudice. Accordingly, he contends that he has made full restitution and amends to all parties experiencing a pecuniary loss arising from his actions. The Mississippi Bar neither admits nor denies this assertion. However, the Bar does state that Robb "has probably satisfied the requirements."

REQUISITE LEGAL LEARNING
¶ 6. Robb contends that he possesses the requisite legal learning to be reinstated. Robb graduated from the University of Mississippi School of Law in 1979. Before the suspension, Robb was licensed in all courts of the State of Mississippi. He has maintained two offices for the past fifteen years working primarily in the fields of bankruptcy, personal injury and worker's compensation. Since his suspension, Robb asserts that he has updated his computer system to conform to new rules and case law, read monthly supplements of bankruptcy cases, continued his membership in the Mississippi Bankruptcy Conference and the Fifth Circuit Court of Appeals Bar, attended a bankruptcy seminar for CLE credit and obtained a passing score of 114 after he voluntarily sat for the Multistate Professional Responsibility Exam.
¶ 7. For the most part, the Mississippi Bar neither admits nor denies Robb's statements. However, the Bar submits that Robb's MPRE score was neither certified nor attested. In addition, the Bar contends that Robb did not attach a proof of attendance form from the CLE seminar. The Bar does admit *425 that Robb "probably has satisfied the requirements."

REASONS JUSTIFYING REINSTATEMENT
¶ 8. To further justify his reinstatement, Robb admits in the filing presently before this Court that the actions that resulted in his suspension were wrong and he promises not to repeat such actions. He also now recognizes the power of this Court to supervise and discipline his future practice of law. Robb also points to his actions following the suspension to notify all clients, courts and opposing parties regarding his suspension in strict compliance with Rule 11 of the Rules of Discipline to allow for an efficient transition in his absence. Finally, Robb argues that the public and the Mississippi Bar have been fully vindicated by the punishment, and the resulting negative publicity, that he received.
¶ 9. The Mississippi Bar neither admits nor denies most of the assertions offered by Robb. However, the Bar "denies that it and the public have been fully vindicated."

REHABILITATION AND REQUISITE MORAL CHARACTER
¶ 10. Finally, Robb addresses the requisite moral character to be reinstated. In support, Robb cites several examples of his moral character: his stable family situation, his reliance on the income from his law practice[1], no criminal convictions, no drug or tobacco use, volunteer readings for Public Radio of Mississippi and participation in the campaigns of Martin Pace and Gerald Hosemann. Robb also submits eight (8) letters of recommendation from members of the Mississippi Bar. The letters of recommendation were submitted by Honorable Charles Brewer, Honorable James Cothren, Judge Gerald Hosemann, Honorable John Paxton, Honorable Eugene Perrier, Honorable Selene Maddox, Honorable Roy Perilloux and Honorable Marcie Southerland.[2] This Court considers letters of recommendation to be admissible evidence of character. Ex Parte Marshall, 165 Miss. 523, 551, 147 So. 791, 796 (1933).
¶ 11. The Mississippi Bar contends that Robb does not have the requisite moral character to be reinstated and submits four (4) incidents for the Court to consider.

FIRST INCIDENT
¶ 12. The first incident involves charges of simple assault and possession of a concealed weapon filed against Robb. On September 25, 1996, Gloria Fisher, a Delchamps grocery store employee, filed a "Citizen Complaint Report" with the Vicksburg Police Department. The report states:
Charles (Robb) walked in the deli and asked: "Was there stale donuts?" I said "yes" and I said to him I don't fool with you. He walked behind the deli counter and I turned around. He had a gun pointed at me. He said "I will shoot you."
¶ 13. Based on this statement, Robb was charged with simple assault and possession of a concealed weapon without a permit. The charges were dismissed when Fisher decided not to testify against Robb. Robb indicated that he probably paid the $50.00 in court costs.
¶ 14. Michael Martz, the Bar's General Counsel, interviewed Fisher on February 5, 1997. He also interviewed two Delchamps store managers, Ricky Bourg and Delbert Crooks, and another witness known only as Cheryl. Fisher reiterated the contents of her complaint and admitted that she knew Robb prior to the incident. When questioned about her decision not to testify, Fisher stated that she "prayed about it and decided that he really didn't mean (me) any harm; that he was just fooling around and that she didn't want to cause him or his family any *426 trouble." She also described the gun in Robb's possession as "a big gun."
¶ 15. Crooks stated that Robb was "banned" from the store immediately after the incident and remains "banned" from the store. Bourg considered the dismissal of the charges to be "fishy."
¶ 16. Robb portrays the situation in a different light. First, he denies pointing the gun at Fisher or saying that he "was going to shoot her." Second, he claims that prior to entering the store, he had removed the clip and barrel from the Model 1911 Colt .45 automatic. This assertion appears to be in direct opposition to the statement of Fisher that it was a "big gun." Robb also contends that Fisher approached his attorney, Eugene Perrier, and asked for $5,000 in exchange for not testifying. Robb denies paying the "hush money" but failed to notify any law enforcement official regarding the attempted extortion.
¶ 17. In his deposition, Robb contends that the whole matter was in retaliation to some comments that he had jokingly made the previous week regarding Fisher's tardiness, and he offers the following account of the event. On the date in question while waiting for his wife's Explorer to be fixed, Robb decided to go to Delchamps to get some donuts. Wary of potential theft at the repair shop, Robb disassembled his wife's pistol and removed it from the vehicle. Naturally, he carried the disassembled pistol with him to the grocery store. When the pistol began to slip from his belt, Fisher noticed the weapon and asked to see it. Robb protested for safety reasons and proceeded to buy his donuts. Robb also contends that he was questioned by an unidentified assistant manager who was quickly put at ease because of the gun's inoperative nature. After leaving the store at 8:30, Robb was informed that the police were looking for him around 10:00. Robb contends that Fisher admitted to his wife as well as a "yard lady" that she concocted the charges in retaliation to Robb's comment about her tardiness. After originally seeking a car, Fisher decided that $5,000 would buy her silence and relayed this message to Robb's attorney. Robb did not comply and did not notify any law enforcement personnel. Following the incident, Robb was banned from the Delchamps on Indiana Avenue in Vicksburg to which he responded: "its not that big of an issue. There's plenty of grocery stores to shop in."
¶ 18. Robb contends that no complaint has been filed with the Mississippi Bar regarding the preceding incident, that it is irrelevant and that he is afforded the presumption of innocence. Furthermore, Robb has submitted a sworn statement from Gloria Fisher describing her own actions as an "overreaction."
¶ 19. The Mississippi Bar recommends that an evidentiary hearing be held to unearth the true facts of this situation. Since the charges filed against Robb are serious and the descriptions of the incident vary greatly, we feel that an evidentiary hearing is necessary.

SECOND INCIDENT
¶ 20. On December 18, 1996, Robb filed a Petition for Writ of Certiorari in the United States Supreme Court challenging the Mississippi Supreme Court's Order suspending him for six (6) months. The Mississippi Bar contends that Robb accused the Mississippi Supreme Court of departing from accepted procedural due process standards and exhibiting a "retaliatory motive" against him.
¶ 21. Robb argues that his statements were taken out of context and asserts no challenge to this Court's power. He urges the Court to distinguish his appeal, arguing procedural and jurisdictional questions, from an appeal challenging the power of the Court.
¶ 22. Despite Robb's contentions, the fact remains that his petition contained the following statement: "The consistent denial of due process supports the existence of a retaliatory motive within the court and the need for this Honorable Court (U.S. Supreme Court) to apply the safeguards of Pearce."

THIRD INCIDENT
¶ 23. The third incident presented by the Mississippi Bar concerns Robb's possible involvement in a civil case while on suspension. The Bar submits that Robb was co-counsel for Lewis Wallace, and possibly others, in a *427 law suit filed in the Hinds County Circuit Court, First Judicial District, Cause No. 251-95-475 CIV styled Lewis Wallace, et al. v. The University of Mississippi Medical Center, et al. According to the Mississippi Bar, a paralegal in the firm of Page, Kruger & Holland, P.A., Lissa Galloway, received a telephone call from Robb. He indicated that he had been suspended from the practice of law, but he could continue to work on this case since he already had it before the suspension began. According to Galloway, Robb advised her that the natural mother had disappeared, and he was trying to find her. He also wanted Stephen Kruger to get the guardianship papers ready as soon as possible because "he was broke and needed money." The Bar spoke to Karla Pierce, Robb's co-counsel on this matter, who indicated that, to her knowledge, Robb did not work on the case following his suspension.
¶ 24. Robb denies the allegation and suggests that the Bar has no proof that he did work on the case. The Bar admits that, with the exception of the statements of Galloway, it has no direct proof that Robb was involved in the case.

FOURTH INCIDENT
¶ 25. The Bar raises its fourth argument in its Second Supplement to the Answer of the Mississippi State Bar. On April 30, 1997, the Mississippi State Bar received a letter from James Chaney, Jr., who was Robb's opposing counsel in a will contest matter. The letter suggests that Chaney waited a considerable length of time to allow Robb's clients to seek new counsel. When this didn't happen, Chaney served the clients with process. In a motion attached to Chaney's letter, Robb's former clients contend that they found out about his suspension from the newspaper and that they repeatedly tried to contact him to no avail. The Bar contends that, if true, the allegations constitute a violation of Rule 11 of the Rules of Discipline.
¶ 26. Robb answers this allegation with a purported copy of a letter sent to his former clients. Robb also contends that the motion was not taken under oath and that his phones in each office were operational at all times following the suspension. He also maintained post office boxes for both offices. Robb also attaches the affidavit of John Price, the attorney who replaced Robb in the matter. Robb claims that the affidavit proves that his former clients waited three weeks before finding new counsel. Finally, Robb offers the Final Decree from the Chancery Court to show that his former clients suffered no harm from the delay.
¶ 27. The Mississippi Bar makes no findings from the preceding statements and offers this incident only for the Court's consideration.

CONCLUSION
¶ 28. The Mississippi Bar contends that Robb has not met the required burden of proof that he has been fully rehabilitated with regard to his character. Therefore, the Bar opposes Robb's reinstatement to the Mississippi Bar. We agree.
¶ 29. Robb's involvement in an alleged assault is a serious matter at least deserving of an evidentiary hearing. His possession of a handgun in a grocery indicates questionable judgment, at best. The circumstances surrounding the dismissal of the case are suspicious in nature and deserving of further explanation. We therefore deny the application for reinstatement and remand this proceeding to the Complaint Tribunal for a full evidentiary hearing on all issues pertaining to Robb's fitness to practice law, including the facts surrounding the handgun incident.
¶ 30. APPLICATION FOR REINSTATEMENT DENIED AND THIS CAUSE REMANDED FOR FULL EVIDENTIARY HEARING.
PRATHER and SULLIVAN, P.JJ., and PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
DAN LEE, C.J., concurs in result only.
NOTES
[1] Since the suspension, Robb has relied on fees earned in cases that were filed prior to July 1, 1996. Mrs. Robb works full-time, but Mr. Robb has not held a paying job since the suspension.
[2] Mr. Robb indicated at his deposition that with the possible exception of Mr. Brewer and Mr. Perilloux all of the other individuals who provided him with letters of recommendation were aware, at the time they prepared their letters of recommendation, that Robb had been charged with simple assault and carrying a concealed weapon. The record is unclear regarding Marcie Southerland's knowledge of the alleged event.